## LEVY *v.* SALT LAKE CITY.

A MUNICIPAL CORPORATION, WHICH BY ITS CHARTER HAS POWER TO MANAGE, REGULATE, AND CONTROL the water flowing into the city, for irrigation and other purposes, is liable for the damage resulting from a negligent exercise of the power in distributing water to the inhabitants of the city, even though there is no statute creating a liability therefor. Such liability exists though the city does not own or claim to own the water, where, as in this case, the action is for a negligent control and use of it.

IN THIS REGARD, MUNICIPALITIES ARE UNLIKE INVOLUNTARY OR QUASI CORPORATIONS, SUCH AS TOWNS AND COUNTIES, which are deemed mere auxiliaries of the state, and are usually endowed with powers alike common to all, and are liable for the wrongful or negligent exercise of such power, or the performance of such duty, only where there is a statute recognizing the liability.

APPEAL from the third district. The opinion states the facts.

*Sutherland & McBride,* for the appellant, cited, on the question of the liability of the city, Thompson on Neg., 731–733, 738, 740, 741, 745; 91 U. S. 540; 1 Black, 39; 4 Ohio St. 80; 6 Gray, 547; 5 Id. 110; 3 N. Y. 464.

*A. Miner,* for the respondent.

The power to control and regulate the use of the waters of the city is a police power, and the city is not liable, in the absence of a statute, for the wrongful or negligent exercise of the power: 8 Met. 462; Cooley on Torts, 620; *Elliott* v.

*City of Philadelphia,* 75 Pa. St. ——; 13 Met. 297; 3 Cush.
121; 51 Cal. 52, and cases cited in appellant's brief in said
case.    See also 16 Gray, 297; 102 Mass. 489; 7 Id. 169, 187;
8 Met. 462, 466; 19 Pick. 511.

TWISS, J.:

The plaintiff in his complaint alleges that the defendant is
a municipal corporation, organized by and under an act of the
legislature of Utah; "that under and by virtue of the power
granted by defendant's charter, the defendant has taken the
entire control and possession of all the flowing waters and
the watercourses within its territorial limits; that on the first
day of July, 1880, the defendant had exercised such control
and possession, that by virtue of its ordinances it excluded
all persons from any control over or interference with the
abundant waters which were flowing in the city, under pen-
alties to be sued for and collected for the benefit of said city,
and from all use of said waters except such as should be dis-
tributed by said defendant's agents and servants, to persons
paying therefor; that on said first day of July, 1880, the de-
fendant turned the waters aforesaid then in its control and
possession, and flowing in the vicinity of the plaintiff's lot or
premises, into and upon the land adjacent to the plaintiff's
premises, upon which was plaintiff's cellar, in which was
stored a stock of tobacco owned by the plaintiff, and wrong-
fully permitted and caused the said waters to run in great
volume into and upon the said adjacent land for a long time,
and there to accumulate in a large body without the knowl-
edge or consent of the plaintiff, and there to soak into the
ground and discharge itself into said cellar, and thereby filled
said cellar with water, and ruined said stock of tobacco, with-
out any fault or negligence of the plaintiff, to the damage of
the plaintiff in the sum of five thousand dollars."

The defendant, in its answer, denies that the tobacco men-
tioned in the complaint was owned or stored by the plaintiff
as alleged; admits that it is a municipal corporation as
charged, but denies that by virtue of its charter, right, or
power, or otherwise, it has taken the entire or any control or
possession of all or any of the waters or watercourses within
said city whatsoever, or that it exercises such control.    The

defendant also makes a specific denial of the allegations of the complaint, and alleges contributory negligence on the part of the plaintiff. The answer also contains the following sentence : " Defendant further says and admits that by virtue of its chartered power, and as by its charter it was and is required to do, it has assumed to and does regulate and control the distribution of the waters flowing into said city, throughout such public channels, as it deems most advantageous to the inhabitants of said city, and in such a manner only as shall prevent the unnecessary waste of such waters. That defendant does not claim the ownership or possession of such waters, and never has so claimed such waters. That defendant does claim the right, and the same is enjoined as a duty upon defendant by its charter, to regulate and control the distribution of such water flowing throughout the public channels or watercourses in said city for the respective use and benefit of the inhabitants of said city, who are the owners of and entitled to the use of such waters, and not further or otherwise."

On the trial, at the conclusion of the plaintiff's case, the defendant moved for a nonsuit, which was by the court granted.

A municipal corporation is created by legislative act for the purpose of enabling its inhabitants to manage and control their local affairs; in other words, that they may have the right of local self-government within the limits of and in accordance with the provisions of its charter, which is its constitution, the source of all its authority and powers, creating and defining its duties. Mr. Dillon, in his work on municipal corporations, section 89, says: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incidental to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." Where power to act is clearly given, the right of the city to act by its authorized officers or agents within the limits and scope of the granted power can not be judicially interfered with or questioned, except in cases of

imputed fraud, or where within the province committed to its charge there is a manifest invasion of private rights. The power to act necessarily carries with it the right of determining the manner of acting and of executing the power; and if a city, by its common council or other authorized agents, in undertaking to carry out or execute a power granted by its charter, commits a wrongful act, causing a direct injury to the person or property of another outside of the limits of its public work, then in such case it becomes liable for such injury in a private action. In *Perry et al.* v. *City of Worcester,* 6 Gray, 544, Chief Justice Shaw says: "A public work authorized by law must be executed in a reasonably proper and skillful manner, with a just regard to the rights of private owners of estate. If done otherwise, the damage is not necessarily incident to the accomplishment of the public object, but to the improper and unskillful manner of doing it; such damage to private property is not warranted by the authority under color of which it is done, and it is not justifiable, and a wrong, for the redress of which an action of tort will lie." This proposition of law, so clearly expressed by this learned and eminent jurist, is so universally adopted and so abundantly sustained by authority that a citation of cases would be useless.

The charter of the defendant empowers it "to distribute, control, and so regulate the waters flowing into the city throughout such channels as may be most advantageous, and to prevent the unnecessary waste of water." And for the purpose of carrying out and executing this power, it also grants to the city "power by ordinance to annually levy and collect taxes on the assessed value of all real and personal estate or property in the city made taxable by the laws of the territory, not to exceed one and one quarter mills on the dollar, to control the waters of said city." From the ordinance read in evidence, it can not be pretended that the city had not accepted these provisions, and was not at the time of the alleged injury to plaintiff's property acting upon and under them; and in its answer it "claims the right, and the same is enjoined as a duty upon defendant by its charter, to regulate and control the distribution of the waters flowing throughout the public channels or watercourses in the city for the re-

spective use and benefit of its inhabitants, who are the owners of and entitled to the use of such waters, but not further or otherwise," but says the "defendant does not claim the ownership or possession of such waters, and never has so claimed such waters."

The fact that the defendant does not claim to own the waters is of no importance in the consideration of a claim for damages for a wrongful or negligent use of them. The waters of a stream running through a city do not belong to the corporation, but if it, in the performance of a public duty, builds a bridge over the stream in an improper and unskillful manner, or if, having built it in all respects in a proper and skillful manner, it ceases to have a just regard for the rights of private owners of adjacent estate, and becomes negligent in sustaining and keeping the same in good repair, and thereby private property is damaged, it can not escape the just responsibility for its negligence: *Perry et al.* v. *Worcester, supra.* By the testimony produced on trial, it appeared that the defendant, as a part of its general plan of irrigation, had constructed a water ditch near to one side of one of its streets; from this, which unquestionably is a public ditch or channel, flowed the water which irrigated the premises of the plaintiff and others, and filled the plaintiff's cellar, and caused the damage complained of. This ditch belongs to the city, and was under its sole and exclusive control; the expense of its construction was paid by the defendant. By its ordinance it authorizes and directs a payment in the nature of a special assessment upon those who make application for the use of the water for the purpose of " constructing and keeping in repair all gates, dams, sluices, flumes, and ditches necessary to convey the water from the main or natural water channel to the premises of such applicant." The city assumes the sole and exclusive control, management, and distribution of the waters, provides for the appointment of a watermaster, and assigns to him the duty of " seeing to the proper location, construction, and repair of all gates, dams, flumes, ditches, and reservoirs, that water may not be wasted, streets or sidewalks overflowed or obstructed, or private property damaged." This duty or power of managing and controlling the waters of the city, granted by the charter, accompanied with ample power to raise the

necessary means of carrying out the same, when so far executed that nothing remains to be done except to manage and control the waters in the channels or ditches constructed for them by the city, and to permit them to flow upon the grounds of the several persons who are entitled to the same during the hours and in accordance with the city ordinances or the regulations of the watermaster made in compliance therewith, is certainly not judicial, but ministerial, and the performance of this duty is accompanied with obligations requiring fidelity to the persons who, by the payment of their money to the city for the use of the water, have become entitled thereto, and a neglect to perform this duty with reasonable care and prudence, resulting in damages to such person, entitles him to an action for the damages sustained by him : Dillon on Municipal Corporations, secs. 966, 980 ; *Merrifield* v. *Worcester,* 110 Mass. 216 ; *Lloyd* v. *Mayor of New York,* 5 N. Y. 369 ; *Burton* v. *City of Syracuse,* 36 N. Y. 54 ; *Weed* v. *Village of Balston Spa,* 76 N. Y. 329 ; *Hines* v. *City of Lockport,* 50 N. Y. 236, 238 ; *Weightman* v. *The Corporation of Washington,* 1 Black, 39.

The distinction between the liability of a municipal corporation, made by the acceptance of its city charter, and the involuntary *quasi* corporations known as counties, towns, etc., must not be forgotten. In *Moore* v. *The Inhabitants of the Town of Leicester,* 9 Mass. 247, it was held that a *quasi* corporation is not liable for the neglect of a corporate duty, unless such action be given by some statute. In *Hannan et al.* v. *The County of St. Louis et al.,* 62 Mo. 313, the court, quoting from *Bigelow* v. *Randolph,* 14 Gray, 541, says : " This rule of law, however, is of limited application. It is applied in cases of towns only, to the neglect or omission of a town to perform those duties which are imposed on all towns without their corporate assent, and not to the neglect of those obligations which a town incurs when a special duty is imposed on it with its consent expressed or implied, or a special authority is conferred on it at its request. In the latter case, a town is subject to the same liabilities for the neglect of those special duties to which private corporations would be, if the same duties were imposed, or the same authority conferred on them, including their liability for the

wrongful neglect as well as for the wrongful act of their officers and agents."

If this doctrine is correct, and it seems to be supported by abundant authority, then, although there is no statute expressly giving the action against the defendant city for the recovery of damages caused by the neglect of a corporate municipal duty, the liability of a city invested with its corporate powers, involving the right of raising revenue by taxation and special assessments, and the expenditure of the revenue for general and also for special and local purposes, is greater than that of counties or towns which are deemed to be auxiliaries of the state merely, and when corporations, are of the very lowest grade, and invested with the smallest amount of power: *Barnes* v. *District of Columbia*, 91 U. S. 540; *Aiken* v. *Hall County*, 25 Am. Rep. 730.

In *Barnes* v. *District of Columbia* it is said: "It is denied that a municipal corporation (as distinguished from a corporation organized for private gain) is liable for the injury to an individual arising from negligence in the construction of a work authorized by it. Some cases hold that the adoption of a plan of such a work is a judicial act, and if injury arises from the mere execution of that plan, no liability exists : *Child* v. *Boston*, 4 Allen, 41; *Thayer* v. *Boston*, 19 Pick. 511. Other cases hold that for its negligent execution of a plan good in itself, or for mere negligence in the care of its streets or other works, a municipal corporation can not be charged. *City of Detroit* v. *Blackley*, 21 Mich. 84, is of the latter class, where it was held that the city was not liable for an injury arising from its neglect to keep its sidewalks in repair. The authorities establishing the contrary doctrine, that a city is responsible for its mere negligence, are so numerous and so well considered that the law must be deemed to be settled in accordance with them."

The motion for a nonsuit was based on the following grounds : " The plaintiff has not shown, by any evidence produced, that the city, defendant, had any possession or control of the water at any time of the alleged injury, nor any testimony to show that the defendant is in any way culpable or liable for the alleged loss." The evidence produced by the plaintiff tended to show that the water which caused the

damage to the plaintiff's tobacco came from a channel or ditch in one of the public streets of the city, and that while in such ditch it was under the sole control of the defendant; that the water in passing from the ditch in the street ran through a gate put in the side of the ditch by the city, which was also under its control; that after it left the ditch in the street it was used to irrigate the land adjacent to and upon all of one side of it, as is shown by the following diagram:

NORTH.

*Street Ditch.*

| WEST. | Lot 5. | | Lot 6. | EAST. |
|---|---|---|---|---|
| | Lot 4. | *Ditch.* | Lot 7. | |
| | Lot 3. | | Lot 8. | |
| | *Ditch.* | | | |
| | Smith Lot, 2. / Taylor. / □ Levy. / Bourne. | | Lot 1. | |

SOUTH.

The city watermaster testified that the water flowing in the ditch in front of plaintiff's premises was allotted to the persons entitled to the same, as follows: P. Richardson, Mondays, 3:15 P. M. to 10:45 P. M.; Webber, Tuesdays, 4 A. M. to 10 A. M.; Huntley, Tuesdays, 10 A. M. to 11:05 A. M.; Thomas, Tuesdays, 11:05 A. M. to 6:30 P. M.; Burkett, Tuesdays, 6:30 P. M. to 7:45 P. M.; Johnson, Tuesdays, 7:45 P. M. to 9:15 P. M.; J. Johnson, Wednesdays, 4 A. M. to 8:55 A. M.; Horne, Wednesdays, 8:55 A. M. to 4:25 P. M.; Wilcott, Wednesdays, 4:25 P. M. to 6:20 P. M.; McManamon, Thursdays, 4 A. M. to 9:15 A. M.;

Taylor, Thursdays, 9:15 A. M. to 4:55 P. M.; Bourne, Thursdays, 4:45 P. M. to 5:55 P. M.; Levy, Thursdays, 5:55 P. M. to 7:20 P. M.; Taylor, Thursdays, 7:20 P. M. to 8:55 P. M.; Smith, Friday, 4 A. M. to 7:20 P. M.

This witness also stated that he issued to each of the persons named a certificate for the use of the water at the times specified from the allotments of water for the block in which plaintiff's premises were situated. It appears that the plaintiff was entitled to it from 5:55 to 7:20 P. M. on Thursdays; that Taylor, whose property adjoined and was below the plaintiff's, was entitled to the water from 7:20 to 8:55; that from and after 8:55, the time when Taylor's right to the water ceased, no one was entitled to its use until four o'clock the next morning. The evidence tends to show that during all of this time the water was not shut off at the head of the ditch leading from the ditch in the street to and passing plaintiff's premises, but was permitted to flow all night, and that this was the cause of the overflow into the plaintiff's cellar. There was certainly negligence on the part of some one in allowing this water to flow all night from the street. I am not of the opinion that the evidence shows this to have been the fault or neglect of the plaintiff.

The argument of the defendant, that upon the testimony it is in no way culpable or liable for the plaintiff's loss, is based upon the testimony of Harris, and the ninth section of the ordinance read in evidence, which is as follows: "No person shall be entitled to convey his portion of water from a main ditch to his lot or premises without first having constructed a substantial gate, both in the main ditch and at the head of his branch ditch, the latter to be closed and water-tight, except during the turn of such person to use his portion of the water. When such branch ditch crosses any portion of a sidewalk, the same shall be made of lumber or other substantial material, the covering of which shall be on the same level with such sidewalk. Any person violating any of the provisions of this ordinance shall be liable to a fine, not exceeding twenty-five dollars for each offense."

James Harris testified that he was employed by plaintiff to irrigate plaintiff's premises; that he used the water July 1st for two hours; took it from Bourne, who lives just east of

Levy; that irrigation by him did not flood the cellar on July 2d, and never did; that when he got through irrigating on July 1, 1880, he did not turn the water off at the head of the ditch, but shut it off from Levy's lot, and left it to flow down the ditch outside, just north of Levy's lot. Who then took and used the water he did not know; neither does he know where it went to. The "main ditch" mentioned in this section of the ordinance is, in this case, the ditch immediately in front of plaintiff's premises, and the "substantial gate" there required, "both in the main ditch and at the head of his branch ditch," is a gate immediately below the point where the plaintiff's branch ditch leads from the main ditch to his premises, and a gate at the head of his branch ditch. The testimony of Harris is quoted solely to explain the plan of irrigation adopted by the defendant and the relation of the plaintiff to the city by means of it. It is not at all clear that it was the duty of the plaintiff, at the time his right to the water ceased, to close or shut the gate at the head of the main ditch leading from the ditch in the street near to the premises of plaintiff. The ruling of the court below granting a nonsuit was error. The case is reversed, and remanded for new trial.

EMERSON, J., concurred.

HUNTER, C. J., dissented.