SAMUEL LEVY, RESPONDENT, *v.* SALT LAKE CITY,
APPELLANT.

LEVY *v.* SALT LAKE CITY, 3 Utah, 63.

MUNICIPAL CORPORATIONS.—IRRIGATING DITCH.—Under the charter of Salt Lake City granting to the corporation power "to distribute, control and so regulate waters flowing into the city throughout such channels as may be most advantageous and to prevent unnecessary waste of water," and under the ordinance of the city regulating the water, and establishing a plan for distributing the water and defraying the expenses thereof, when water is turned into any ditch with the knowledge and approval of the city, and is thereby conveyed to the various persons empowered to take the water, such ditch is a public ditch while so used, and the city is chargeable with negligence with respect thereto while so using it. Affirming *Levy* v. *Salt Lake City*, 3 Utah, 63.

EVIDENCE.—CITY ORDINANCE.—The ordinance above is properly admissible in evidence as explaining in what way the city was carrying out the power granted by the charter, what officers represented it and for whose acts the city was responsible.

APPEAL from a judgment of the district court of the third district, and from an order refusing a new trial. The opinion states the facts.

*Messrs. Sheeks & Rawlins*, for appellant.

*Messrs. Sutherland & McBride*, and *Mr. Arthur Brown*, for respondents.

HENDERSON, J.:

This cause is brought against the city for negligently permitting water to flow into plaintiff's cellar and injuring his stock of goods. The case has once been before this court on the appeal of the present respondent, (3 Utah, 63, 1 Pac. Rep., 160), and in the opinion of the court delivered on the hearing of that appeal, and above referred to, the claims of the parties as stated in their pleadings are particularly set forth. The cause was again brought to trial in the third district court, and the testimony for the plaintiff tended to show the same state of facts set

forth in the opinion of Mr. Justice Twiss on the hearing
of the former appeal, above referred to, and to which we
refer without repeating it.    Mr. C. H. Wilcken, who was
city water-master at the time the injury occurred, and
who was sworn on the part of the plaintiff on the former
trial, being absent from the territory, the plaintiff called
Alma H. Winn, the court stenographer, to make proof of
his former testimony.   This was objected to on the ground
that the defendant was not allowed to properly cross-ex-
amine the witness.   The objection was overruled, and the
defendant excepted.   The witness, after giving the testi-
mony above referred to, stated also that as water-master
he knew that the water assigned to block 59 ran through
the ditch from the street, and that on the night in ques-
tion he turned the water on the block and served notice
upon the proprietors adjoining the ditch of their allot-
ment of water, and did not turn it off, but left it running
after the time when all the allotments of owners border-
ing thereon had expired.   On cross-examination by the de-
fendant, the witness was asked why he did not turn the
water off, and various questions were also asked him for
the purpose of showing that the city did not build the
ditch through the block, and that he, as water-master, had
not at any time exercised, or assumed to exercise, any con-
trol over it; all of which was objected to as immaterial,
and the objections sustained.   It is the exclusion of this
testimony on cross-examination that the appellant claims
renders the testimony improper.

The plaintiff also put in evidence the following city or-
dinance, which was received against the objection of the
defendant that it was immaterial and irrelevant:

"Section 1. Be it ordained by the city council of Salt
Lake City, that the city water-master shall qualify in the
same manner as the treasurer; provided, that his bond
shall be filed by order of the city council, and he shall
have authority to appoint, subject to the approval of the
city council, assistant water-masters, resident within the
city, who shall receive from him a certificate of appoint-
ment, and shall act in his name, and for whose official con-
duct he shall be responsible.

"Sec. 2. The period of artificial irrigation shall be deemed to commence annually on the first day of April, and end on the first day of November.

"Sec. 3. Before the fifteenth day of March in each year, every person entitled to use a portion of the waters flowing into said city for irrigation shall present to the city water-master, upon a form presented by said water-master for that purpose, a written application for the use of water as aforesaid, during said period, and specifying therein the lot or lots, or fraction thereof, owned or possessed by said applicant to be irrigated, and agreeing therein that upon demand, and within fifteen days thereafter, he will pay to the city water-master his proportion of the expense of · constructing and keeping in repair all gates, dams, sluices, flumes and ditches necessary to convey the water from the main or natural water channel to the premises of such applicant. Said application shall be filed with the city recorder.

"Sec. 4. Before the said first day of April, annually, the city water-master shall apportion and allot the waters of the several streams flowing into the city among the applicants entitled to use a portion of said waters, with respect to time and quantity of water according to the extent of land specified in their respective applications.

"Sec. 5. Upon such appointment, and before the said first day of April in each year, each applicant as aforesaid, upon the payment into the city treasury of the sum of one dollar for each one and one-quarter acre lot, and fifty cents for each fraction thereof, named in his application, and upon presentation of the treasurer's receipt therefor to the city water-master, shall receive from said water-master a certificate specifying the proportion of water to which such applicant shall be entitled, and the times during which he may use the same in said period.

"Sec. 6. It shall be the duty of the city water-master to see to the proper location, construction, and repair of all gates, dams, flumes, ditches, and reservoirs, that water may not be wasted, streets or sidewalks overflowed or obstructed, or private property damaged.

"Sec. 7. Whenever it shall be necessary to make any

of the improvements mentioned in the preceding section, an estimate of the cost thereof shall be made by the city water-master, which cost shall be apportioned among the persons interested in such improvement, according to their respective portions of water; but in case of any sudden emergency, the water-master shall cause any necessary repairs to be made immediately, the cost of which shall be apportioned thereafter. The said water-master shall cause written notice to be given to each of such persons of the amount to be contributed by him towards such improvement; said notice to be served on him personally, or be left at his residence, or at his usual place of business. Any such person who shall fail, within fifteen days after the receipt of such notice, to tender to said water-master the amount therein specified, shall forfeit his right to his portion of water for irrigation during said period, and the same may be apportioned by the water-master among such persons as bear the expense of such improvement; provided, that if any person tender the equivalent of his proportion of the costs of any of the before-mentioned improvements in labor or material necessary thereto, the water-master is authorized to accept such equivalent, but all such labor or material must be furnished within twenty-four hours after demand is made therefore by the water-master.

"Sec. 8. At all points where water is distributed into main ditches, the water-master shall cause substantial gates to be constructed, at the expense of the corporation, by which the proportion of water flowing in each way may be accurately determined.

"Sec. 9. No person shall be entitled to convey his portion of water from a main ditch to his lot or premises without first having constructed a substantial gate both at the main and at the head of his branch ditch, the latter to be closed and water-tight, except during the term of such person to use his portion of the water. Where such branch ditch crosses any portion of a sidewalk, the same shall be made of lumber or other substantial material, the covering of which shall be on the same level with such sidewalk. Any person violating any of the provisions of this section

shall be liable to a fine not exceeding twenty-five dollars for each offense.

"Sec. 10. Where persons are obliged to convey water across grounds between their premises and the public water-ditches, it shall be done under the direction of the water-master, and with the least possible injury to property, either in digging the requisite ditches or in managing the water therein, and they shall be liable to all damages caused by any failure or neglect on their part.

"Sec. 11. Where the public water ditches pass through private grounds, the right of way for which has already been acquired, any person having the right to use water therefrom is authorized to pass along said ditches, as occasion may require, during the continuance of said right; such passing to be under the supervision of the water-master.

"Sec. 12. All persons using water for irrigation or other purposes, shall conduct the surplus or waste water into the regular water-ditches, and not allow said water to flood the sidewalks or streets, to the damage thereof and the unnecessary waste of water.

"Sec. 13. Any person aggrieved at the apportionment of water allotted to him by the water-master, at his proportion of costs, mentioned in the seventh section, or any other act claimed to have been done by virtue of the provisions of this ordinance, shall, on written complaint, be heard by the city council, who shall constitute a board of equalization to hear and determine such complaints; but all such complaints must be presented to the council within ten days from the origin of the act complained of. Said board may remit or rebate for any insane, idiotic, infirm, or indigent person the tax or fee provided for in the fifth section of this ordinance.

"Sec. 14. Any person turning the water from any irrigating ditch or reservoir in said period, except when the use of the water has been duly allotted to him as herein provided, or without having first obtained a certificate from the water-master, as provided in sections three and five of this ordinance, or in a greater quantity than is allotted to him in said certificate, or after he has forfeited

his right to the use of his portion of water in said period, and any person willfully and maliciously breaking any dam or gate in any stream, sluice, or ditch, or in any way changing the current or flow of the water used for irrigating purposes, shall be liable to a fine in any sum not exceeding fifty dollars, or to imprisonment for any term not exceeding fifty days, or to both fine and imprisonment."

The defendant gave evidence tending to show that the ditch running from the street into block 59 was built by people owning property adjoining it over 20 years prior to the injury; that they put in the gates connecting it with the ditch in the street; that all water assigned to occupants of lots adjoining it had been run into it during that time, and that the city had never in any way repaired or contributed to its repair or maintenance.

One Smith, a witness on the part of the defendant, after testifying that he owned property adjoining the ditch, and had been such owner since 1864, was asked the following question: "Did you, or any person on your block, to your knowledge, ever call upon the city or the water-master, or any of his assistants, to make any repair of this ditch, or keep it in repair?"—to which the plaintiff objected as irrelevant and immaterial, and the objection was sustained by the court.   Before the case came on for trial, defendant filed an affidavit for a continuance on, the ground of the absence of material witnesses, alleging that they could prove by C. H. Wilcken, an absent witness, "that in 1880 he was the water-master of Salt Lake City, and made the apportionment of the water to the occupants of block 59; that he knows the ditches constructed and used by the city in the neighborhood of that block; and that the ditch through which the water ran into said block, and upon the premises of the plaintiff, was not owned, controlled, or in any way operated by the city; that there is no ditch running through block 59 over which the city has at any time since 1879, or during that year, taken any control; that there is no ditch running through that block belonging to the city; and there has not been such a ditch at any time since 1879, and that there is no public ditch in

said block; and there has been none since 1879, nor any ditch belonging to the city over which he had any right, as water-master, to go upon that block." Counsel for the plaintiff admitted that Wilcken would so testify. The defendant offered the affidavit in evidence, and the plaintiff objected to it on the ground that it was a conclusion of the witness. The court sustained the objection, and defendant duly objected to such ruling of the court.

At the conclusion of the testimony the defendant requested the court to charge the jury as follows:

"(1) If you find that the ditch through block 59 has been constructed, maintained, and repaired by the persons in possession of the lots on the block irrigated from said ditch, and their predecessors, and that at the time of the alleged injury, and prior thereto, such persons had the sole and exclusive use and possession of said ditch, and that the injury to plaintiff was caused by such ditch being out of repair while so possessed by such persons and not in the possession of the defendant, then plaintiff is not entitled to recover.

(2) If you find that the city was guilty of negligence in failing to keep in proper repair the ditch in the block 59, and north of plaintiff's cellar, but that the plaintiff could have prevented the injury by the use of ordinary means, and at moderate expense, the plaintiff is not entitled to recover.

(3) If you find that the consequences resulting to plaintiff by the water flowing or seeping into his cellar through the negligence of the city were aggravated by the gross neglect or the want of ordinary care on the part of the plaintiff, or his agent or employees, the city is not responsible for such damages.

(4) Under and by virtue of the ordinance admitted in evidence the city only undertook to convey the water to the immediate vicinity of each block, where it was to be used for irrigation, and to keep in repair the various ditches extending along the public streets and adjacent to the sidewalks for that purpose, while by said ordinance it is made the duty of the person desiring to use such water for the irrigation of his lot, to construct and maintain, at his own

expense, any branch ditch or ditches which may be neces-
sary to carry the water from the main ditch upon the street
across the sidewalk and upon his lot; also to construct a
substantial gate both in such main ditch and at the head
of his branch ditch, and to keep the latter closed and
water-tight, except during the time of such person to use
the water.   And where such branch ditch is used for the
irrigation of more than one lot, or by more than one per-
son upon the same block, it is the duty of such persons
to keep such branch and the gate as aforesaid in proper
repair.

(5) The court instructs you that the plaintiff is not en-
titled to recover in this action."

All of which were refused, and the court charged the jury
upon the matters referred to, as follows:

"(1) The court charges you that by city ordinance
adopted in 1879, which has been put in evidence, the de-
fendant lawfully took and assumed exclusive control of the
waters of City Creek flowing into the city, to distribute
them with reasonable care through main ditches to persons
acquiring the right to participate in their use.

(2) All ditches for the distribution of such water to
the licensees of the city—that is, the system of ditches
to convey water to the private ditches of such licensees,
to enable such licensees to obtain water for irrigation
during the time stated in their respective licenses—are
legally in charge of and under the management of the de-
fendant.

(3) The defendant was bound to manage the distribu-
tion of water by means of such ditches with reasonable
care, so as to prevent the overflow of water therefrom,
to the injury of adjacent owners, either by reason of
negligent construction or negligence in the non-repair of
such ditches, the excessive quantity of water turned into
the same, or negligence in permitting water to flow
therein without providing adequate outlets.

(4) The ditch running through the centre of block 59
is not necessarily a private ditch because built upon pri-
vate property or built by private persons.   If the city used
it as a part of its system of ditches for irrigating purposes,

and it was one of the conduits through which the city delivered water in other parts of the block into private ditches to residents of the city, and recognized by the agents of the city as a part of said system, then it would be a public ditch.

(5) If the jury find that the ditch running down through block 59 was built by citizens upon private property, for the purpose of carrying water for irrigation purposes to different lots and residents in said block, and had been used as such for twenty-five years, and had been recognized by the city officials as a part of its system of irrigation—by the terms of the water ordinance and by allotments of water to be supplied from said ditch—then it would be a public ditch, and the city was bound to keep it in repair while so using it for such distribution, and would be liable for any negligence in its being out of repair or in an unsuitable condition for conveyance of water."

Verdict and judgment passed for the plaintiff for $4,900 and costs. The defendant moved for new trial on statement, which was denied, and it appeals to this court from the judgment and order denying new trial, and alleges the following errors: "(1) The court erred in admitting the testimony of C. H. Wilcken given at a former trial, and in refusing the motion of the defendant to strike out the same. (2) The court erred in admitting in evidence the ordinance. (3) The court erred in sustaining the objection of plaintiff's counsel to the question propounded to the witness John Smith in relation to calling upon the city to make repairs of the ditch extending through the block. (4) The court erred in making the statements it did in the presence of the jury in ruling upon the objection to the question propounded to Smith. (5) The court erred in those parts of its charge to the jury, marked 1, 2, 3, 4, and 5, respectively. (6) The court erred in its refusal to charge the jury, as requested by the defendant, in each and all of said requests numbered from 1 to 5, inclusive. (7) The court erred in rejecting the testimony of C. H. Wilcken as appearing in the affidavit for a continuance, and which plaintiff's counsel admitted he would testify to."

Defendant, by its counsel, avers that the evidence is in-

sufficient to justify the verdict in the following particulars, to-wit: The evidence does not show any negligence on the part of the defendant in regard to repairing the ditch in block 59, or that defendant had any possession, control, or right to repair such ditch, or that the ditch was out of repair. There is no evidence that defendant knew that said ditch was out of repair, or that it had been out of repair long enough for the defendant to have known it in the exercise of reasonable diligence. There is no evidence that defendant turned the water into said ditch, or knowingly permitted or suffered the same to flow therein, or that the same was inadequate to carry said water, except when obstructed by third parties. There is no evidence showing any negligence on the part of defendant, or negligence which caused injury to the plaintiff. The evidence shows contributory negligence on the part of plaintiff.

Upon the hearing of the former appeal, the liability of the city for damages resulting from a negligent exercise of its duties in distributing water to the citizens was expressly affirmed, and we have no disposition to disturb that determination; but the question as to how far this liability extends, and over what ditches and water-owners it is charged with care and supervision, is presented by this record. The contention of the appellant is fairly stated in its fourth request to charge, while the contention of respondent is seen in the five paragraphs of the charge above quoted; and we apprehend that the determination of this question determines most of the errors alleged. If the city only undertakes to bring the water along the public streets in the vicinity of the property where it is to be used, and in ditches actually constructed by it, and is only chargeable with that duty, then the testimony excluded on the cross-examination of the witness Wilcken, and on the examination of the witness Smith, should have been allowed, and the requests to charge of the defendant should have been given instead of the instructions given by the court. On the other hand, if the city is charged with the care and control of the water until it is segregated and set apart from the common mass to the licensee, and conduits and ditches used by it for that purpose are under its care and control, then the requested

proof would be clearly immaterial, and the instructions given were correct.

The city charter, in enumerating the powers and duties of the corporation, provides, among other things, as follows: "To distribute, control, and so regulate waters flowing into the city throughout such channels as may be most advantageous, and to prevent the unnecessary waste of water." Comp. Laws Utah, 1876, p. 705, sec. 55. The charter does not confer upon the city the absolute title to the water flowing into it, but commits it to its care, in trust for the inhabitants, and charges it with the responsibility of a proper execution of such trust. The ordinance received in evidence is the regulation by the city of this power conferred upon it, and the scheme or plan adopted requires annual application by each property owner for the use of water, and an annual appointment thereof by the city to such applicants, and requires the applicant to pay a certain amount, which is undoubtedly to defray such expenses as are common to all the property owners of the city; and also his proportion of any amount which is necessary to construct any ditch for the benefit of himself and other property owners which is not common to the entire city. The apportionment of such expense is made by the city water-master, and the applicant is not entitled to his allotment until it is paid. Section 6 expressly provides that "the location, construction, and repair of such ditches" shall be under the control of the city. In distributing water throughout the city for irrigating purposes, and thereby executing the trust reposed in the city, the fact must be remembered, which is recognized by this ordinance, that it must be distributed from along the lines of highest elevation, or from the summit of each particular district, so that the lands to be irrigated may be "under the ditch." These lines of elevation do not always follow the outer or street limits of the block, and it may be just as necessary to construct ditches in which to convey water on its way for divisions and distributions through the center of a block and across the lots composing it, as it is to run the ditch along the streets of other blocks. In this case according to the claim of the appellant, if the water assigned

to the various owners on block 59 had been continued along the street on the north side of the block to the corner, and thence south along the east side, and around the block to each occupant, it would have been under city control. But if that should deliver the water upon the lowest part of the premises to be irrigated, then the city could avoid all responsibility by turning the whole mass across the sidewalk on the north side, and then turn it over to the various owners and leave them to take care of it at their peril.

In the spring before this damage was done, when the property owners on block 59 made applications for assignments of water, it was the duty of the city (acting by and through the water-master) to examine the premises, and if there was not a proper ditch or water-way to properly deliver the water to them, and such as the city was willing to accept and use, then it was its duty to ascertain the cost and expense of such a ditch, and apportion it among such owners. And if such apportionment was paid, it should construct the ditch; if not paid, the water should have been withheld. All this it had ample authority and was its duty to do under the ordinance. If, on the other hand, when such application was made, the city found such a ditch as it was willing to accept, whether it was a natural water-course or made by the parties who would ultimately be chargeable with its cost, and the city did accept it by issuing its licenses, receiving the fee provided by section 5 of the ordinance, and turning the water in a common mass assigned to such owners into such ditch, or using it for the purpose of conveying their allotments to them, it would thereby become its ditch; and it would be chargeable with its care and maintenance; and it would be a main or city ditch mentioned in the ordinance.

We are of the opinion that under the charter and ordinance the city is charged with the custody and control of the waters of the city until they are conveyed to that point where they are segregated and set apart to the particular licensee from the common mass, and that when waters are assigned to various property owners, and is in common turned into or run in a ditch, with the knowledge and ap-

proval of the city, and is thereby conveyed to the various licensees, such ditch is a public ditch while so used, and the city is chargeable with negligence with respect thereto. We do not mean to say that property owners may not so interfere or assume control over a ditch as to release the city from its duty; but there is no evidence in this record that the respondent did anything in respect to the ditch running through block 59 except to receive his allotment of water therefrom into his private ditch. The allotments are made annually, and what may have been done in years past, when, so far as this record shows, the respondent may not have owned the property, is immaterial unless he is shown to be in some way bound thereby. We are therefore of the opinion that the questions asked the witness Wilcken on cross-examination, were properly excluded, and the testimony given on the former trial was admissible, and that the testimony of the witness Smith was properly excluded. The testimony sought from both these witnesses only tended to show flagrant disregard of its duty on the part of the city, which could not exonerate it. The requests of the appellant were properly refused, and the instructions given by the court instead thereof were in accordance with the views above expressed, and were, we think, proper.

The law, as stated by the court to the jury upon the questions of negligence and contributory negligence, was as favorable to the appellant as could properly have been asked.

The ordinance was properly received in evidence. It explained in what way the city had undertaken and was carrying out the trust committed to it by the charter, what officers represented it, and for whose acts it would be responsible. It was within the power granted by the charter, and was a reasonable regulation, and had all the force of public law, and both the city and the inhabitants were bound by it. 1 Dill. Mun. Corp. (3d Ed.), sec. 308; *Taylor* v. *Carondelet*, 22 Mo., 105; *Milne* v. *Davidson*, 5 Mart., (La.) 586; *State* v. *Clarke*, 25 N. J., Law, 54.

The refusal to receive in evidence the affidavit of O. H. Wilcken remains to be considered. Wilcken had already

been examined.   He had testified that he was water-master, and made the apportionment to the owners of property on block 59, as stated in the opinion of Judge Twiss before referred to; that he knew of the use of the ditch to convey water to the property on the block; that he turned the water on to the block.   It is plain from this testimony and the affidavit that when he says there was no public ditch in block 59 nor one owned by the city, he is merely stating his conclusion from the fact that the city did not build it, and was therefore improper testimony.   The statement in the affidavit that the city did not control or operate it is of the same class as that offered from the witness Smith, which was rejected.   Indeed, it is just what is complained of in this case,—-that the city turned the water into this ditch, and used it to furnish water to its licensees, and did not operate or control it, and thereby the respondent was injured.   The affidavit was properly rejected.

We see no error in the record, and the judgment and order appealed from should be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.