BELFAST WATER COMPANY *vs.* CITY OF BELFAST.

Waldo.   Opinion August 12, 1898.

*Construction of Contract.   Water Works.*

1.   The plaintiff made a contract with the defendant in which it was agreed, among other things, that the company should furnish at such points as the city should thereafter designate, which points should be substantially those indicated upon the plan annexed to the contract, forty-five hydrants of approved pattern, each provided with three nozzles wherever required by the city.   It was further agreed that if at any time the city desired additional hydrants above said number of forty-five, the company should furnish the same at an annual rental of thirty-five dollars for each hydrant set upon the pipe indicated upon the plan, and forty dollars for each hydrant which should come on new pipe; also that if the city should desire five hydrants additional to the forty-five before stipulated, located so as to require no more pipe than should be necessary to connect up the said forty-five hydrants, the company should place said five hydrants without additional charge, provided they could be set during the construction of the works, and include the rent thereof in the sum thereinafter designated for hydrant service.   It was also agreed that all hydrants should be "so piped as to receive an abundant and sufficient circulation of water among and in all of the same."   The company further agreed "to lay a main pipe not less than ten inches and not more than twelve in diameter in the clear, from the reservoir or stand pipe" through certain specified streets, "to connect up all said forty-five hydrants,

located as aforesaid, and all such additional hydrants, in such manner that none of said hydrants shall come on pipe smaller than six inches in diameter in the clear." The city agreed "to pay semi-annually for the hydrants aforesaid, not exceeding fifty in number, a rent of nine hundred dollars."

After the original water works had been completed, the city directed the company to lay a main through a street not specifically named in the contract, "as provided in the contract with said company." The company laid a four inch main, set two hydrants, and connected the hydrants and main with six inch pipe. In an action to recover the hydrant rental under the contract, *the court holds* that all hydrants in addition to the original forty-five, whether placed during the construction of the works or later, are within the provision of the contract requiring the location of "all such additional hydrants in such manner that none of said hydrants shall come on pipe smaller than six inches in diameter; and that even if the facts of the case otherwise admitted of the application of the doctrine of "substantial compliance," it cannot be said that furnishing pipe less than half the capacity called for by the contract is a substantial compliance with its provisions. *Held;* That the plaintiff cannot recover the rental.

2. By virtue of a contract with the city, the company obtained authority "to dig up any and all highways, ways and streets in said city, for the purpose of laying pipes during the time of constructing said works," and acting under this authority, it laid its pipes, and located certain water gates, within the street limits, near the edge of the sidewalk as it then existed. Subsequently, the city proposed to widen the sidewalk and put down a granite curbing, and directed the company to move the gate boxes and place them outside of the curbing, which was accordingly done. *Held;* that when the company placed its water gates in the street under this contract, it did so subject to the right of the city to make such changes in the surface of the street and the alignment of the sidewalk as might be necessary to render the street safe and convenient for public travel; and whenever it became necessary to change the location of the water boxes, by reason of necessary repairs or improvements in the street, it was the duty of the company to make the change at its own expense. *Held;* That it cannot recover the expense of the city.

ON REPORT.

This action was brought to recover the rental of two hydrants from October 1, 1893, to October 1, 1897, four years at forty dollars per year, one hundred and sixty dollars, and for changing water gates by order of the committee on highways of the city of Belfast, twelve dollars and thirty cents, making one hundred and seventy-two dollars and thirty cents in all. The price of the hydrants charged in the account annexed to the writ is fifty dollars per year.

The case is stated in the opinion.

*R. F. Dunton*, for plaintiff.

In 1891 the Belfast Water Company, by order of the City Government, made an extension on Bay View street, for two hydrants; the pipe laid was four inch pipe, and the city has paid for these hydrants without objection, from the time they were set to the time of the trial of this case. It has never been claimed that this extension on Bay View street should have been laid with six inch pipe. This was a construction put upon the contract by the parties, presumably with full knowledge of the facts, and the court should not now adopt a different construction. *Varney* v. *Bradford*, 86 Maine, 510.

But whatever construction the court may put upon the contract, there can be no doubt that the construction put upon it by the Water Company was in good faith, and that the four inch pipe was laid by the company in good faith, supposing that it was complying with its contract. This being the case, and it appearing that the water supply is sufficient for the locality, the city would be liable for the contract price of the hydrants. If the water supply is sufficient, the result for which the city contracted has been accomplished, and this is such a substantial performance of the contract as entitles the plaintiff to recover, if done in good faith, and as to the bona fides of the plaintiff, it seems to me there can be no doubt. There being no claim, or evidence tending to show, that the water service from these hydrants is insufficient, or less efficient, on account of the size of the pipe, nothing should be deducted from the contract price. *Hattin* v. *Chase*, 88 Maine, 237; *Veazie* v. *Bangor*, 51 Maine, 509; *Norris* v. *School District*, 12 Maine, 293; *Hayward* v. *Leonard*, 7 Pick. 181.

*George E. Johnson*, for defendant.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL, SAVAGE, JJ. FOGLER, J., having been of counsel, did not sit.

SAVAGE, J. The principal item which the plaintiff seeks to recover in this suit is the rental of two hydrants from October 1,

1893, to October 1, 1897. It appears that the defendant city directed the plaintiff company "to lay a main through Vine Street to Waldo Avenue, as provided in the contract with said company." A main was laid and the hydrants placed. And these are the hydrants in question. The main was of four inch pipe. The connection from the main to the hydrants was of six inch pipe.

The defendant claims that the plaintiff was obliged by its contract to lay its mains with which hydrants were to be connected at least six inches in diameter, and that having failed to do so in this instance, and having put in only four inch pipe, it cannot recover the hydrant rental.

The rights of the parties are fixed by a contract in writing, dated November 15, 1886, which is made a part of the case. The only parts of the contract which relate to the subject matter of this controversy are these:

"And said party of the first part (the company) hereby further agrees to furnish at such points as said party of the second part (the city) may hereafter designate, which points shall be substantially those indicated upon the plan hereunto annexed, forty-five (45) hydrants of approved pattern, each provided with three nozzles, wherever required by said party of the second part. If at any time said party of the second part desires additional hydrants above said number of forty-five (45), said party of the first part agrees to furnish the same at an annual rental of thirty-five dollars ($35) for each hydrant set upon the pipe indicated upon the plan aforesaid, and forty dollars ($40) for each hydrant which shall come on new pipe; provided, however, that said party of the second part shall pay at the rate of rent of one hydrant for every seven hundred (700) feet of extended pipe. And if said party of the second part should desire five (5) hydrants additional to the forty-five before stipulated, located so as to require no more pipe than shall be necessary to connect up said forty-five hydrants, said party of the first part agrees to place said five hydrants without additional charge, provided they can be set during the construction of said works, and to include the rent thereof in the sum hereinafter designated for hydrant service. All hydrants are to be so

piped as to receive an abundant and sufficient circulation of water among and in all of the same."

"And said party of the first part further agrees to lay a main pipe not less than ten (10) inches, and not more than twelve (12) inches in diameter, in the clear, from said reservoir or standpipe, down Main street to the junction of Main and High streets, and there divide the same into three (3) eight (8) inch branches, one continuing down Main street, and one each way on High street, and to furnish sufficient six (6) inch pipe, to connect up all said forty-five hydrants, located as aforesaid, and all such additional hydrants in such manner that none of said hydrants shall come on pipe smaller than six (6) inches in diameter in the clear."

And the city on its part agreed "to pay semi-annually for the hydrants aforesaid, not exceeding fifty in number, a rent of nine hundred dollars."

By this contract the company agreed, in the first place, to place forty-five hydrants for a semi-annual rental of nine hundred dollars. Then it agreed to place additional hydrants without limit, as desired by the city, for a specified rental. But it was provided that the company should place five hydrants additional to the forty-five, without extra charge, that is to say, for the same nine hundred dollars, if they could be set during the construction of the works, and should require no more pipe than was necessary to connect up "the forty-five hydrants."

The defendant relies upon the following clause in the contract, —"and all such additional hydrants" shall be located "in such manner that none of such hydrants shall come on pipe smaller than six inches in diameter in the clear." The plaintiff claims that this clause is limited to the five "additional hydrants" which might be placed without extra charge during the construction of the works, under the proviso to which we have referred, and not to "additional hydrants" which might be placed thereafter by direction of the city. The plaintiff contends further that as to additional hydrants placed after the completion of the works, the only requisite specified in the contract is that "all hydrants are to be so piped as to receive an abundant and sufficient circulation of water among

and in all of the same." We do not think so. It is true that the clause just quoted is general and applies to all hydrants, both the original forty-five and all additional ones whenever placed. But we think that, in addition to this, all additional hydrants, whenever placed, must be so located as to come on pipe at least six inches in diameter. The contract reads, "all such additional hydrants." The words are general and inclusive. There is neither limitation nor distinction. We think that the necessary construction is that all additional hydrants, whether placed during the construction of the works or later, are within the requirement of the contract, relating to size of pipes.

But the plaintiff says that, even if such be the proper construction of the contract, it has in good faith substantially complied with the requirement in question. We do not think that the facts in this case admit of the application of the doctrine of "substantial compliance." *Hill* v. *School District*, 17 Maine, 316; *Holden Steam Mill Co.* v. *Westervelt*, 67 Maine, 446. And if they did, we cannot say that furnishing pipe less than half the capacity called for by the contract is a substantial compliance with its provisions. The plaintiff cannot recover this item.

The plaintiff also sues for expense of changing water gates by order of committee on highways. The contract between the parties provides that the water company "shall have the privilege and right to supply water for domestic and other purposes, and be authorized to dig up any and all highways, ways and streets in said city, for the purpose of laying pipes during the time of constructing said works, and at any time thereafter, for the purpose of making extensions and repairs, and for doing such other work as may be necessary in connection therewith, or in the operation of said water works; the same to be done with as little obstruction or delay to public travel as may be practicable."

The water company, at the time it built its works, located the gates in question, which control private services, within the street limits, near the edge of the sidewalk as it then existed. Subsequently, in 1897, the city proposed to widen the sidewalk and put down a granite curbing. The city authorities notified the water

company to move the gate boxes and place them outside of the curbing, which was accordingly done. No question is raised but that it was reasonable that the gate boxes should be so moved. There was no express agreement on the part of the city to pay the expenses of removal, but it is claimed that a promise may be implied from the circumstances already stated. We think not. When the company placed its gates in the street of the 'city under the contract referred to, it did so subject to the right of the city to make such changes in the surface of the street and the alignment of the sidewalk as might be necessary to render the street safe and convenient for public travel. In making needed repairs and changes in the streets, the city is but an instrument of the state, an agent of the public, and it cannot barter away its rights or fetter its duty to make such repairs and changes. To subject itself to the expense of changing the appliances of the water company in the streets whenever it became necessary to change them, by reason of .repairs, would be a serious impairment of its rights, and an onerous addition to its duties.

As well stated in *National Water Works* v. *City of Kansas*, 28 Fed. Rep. 921 : " The contract between the plaintiff and the defendant must be interpreted in the light of this well established rule; and, so interpreted, the plaintiff took its right to lay its pipes in the streets of the city subject to the paramount and inalienable right of the city to construct sewers therein whenever and wherever in its judgment the public interest demanded. Laying its pipes subject to this right of the city, it has no cause of action if, in consequence of the exercise of this right, it is compelled to relay its pipes." See *Rockland Water Co.* v. *Rockland,* .83 Maine, 267. Whenever it became necessary to remove the gates, it was the duty of the company to do so at its own expense.

*Judgment for the defendant.*