Submitted on motion to correct transcript July 12, decided Aug. 3, 1910.
Argued on the merits Oct. 6, 1910, decided Jan. 10, rehearing
denied April 4, 1911.

## MUTUAL IRRIGATION CO. *v.* BAKER CITY.

[110 Pac. 392: 113 Pac. 9.]

APPEAL AND ERROR — TRANSCRIPT — CURING DEFECTS — SUPPLYING
OMITTED PAPERS.

1. Section 553, B. & C. Comp., requires appellant to file a transcript
containing copies of the decree appealed from, etc.; and Section 554
provides that, when it appears by affidavit that the transcript filed is
incomplete, the Supreme Court may rule the clerk of the trial court
to certify as to the alleged omission, and, if papers have been omitted
to transmit a copy thereof to the Supreme Court.  *Held,* that a copy
of the decree unintentionally omitted from the transcript can be supplied
on application, by directing· the clerk of the trial court to send up a
certified copy thereof.

INJUNCTION—EQUITABLE ESTOPPEL.

2. An irrigation company maintaining ditches on the sides of city
streets was seasonably notified of an ordinance providing for the improve-
ment of the streets and permitting it to apply for plans, if it desired
to continue the use of the ditches, but it made no request for plans.
The president of the company, at a conference with the city council,
protested against the destruction of any of its ditches.  *Held,* that a
delay of two months in suing to enjoin interference with its ditches during
the construction of the improvement by the city under the ordinance did
not equitably estop the company; it not deriving any benefit from the
improvements.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ORDINANCE —
VALIDITY.

3. An ordinance providing for a public improvement at the cost of
the immediate property benefited, or at the expense of the owner of the
property, must specify the general character and extent of the improve-
ment, and where the ordinance is so uncertain as not to be susceptible
of performance, the ordinance is inadequate.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—POWER TO MAKE.

4. The power of a city to make public improvements must be found
in the charter conferring the right, either by express grant or by neces-
sary implication.

MUNICIPAL CORPORATIONS—POWERS—DELEGATION OF AUTHORITY.

5. The power of a city to make public improvements cannot be dele-
gated when it involves the exercise of discretion and judgment, unless
permission to do so is expressly granted.

MUNICIPAL CORPORATIONS—POWERS—DELEGATION OF AUTHORITY.

6. Baker City charter (Sp. Laws 1903, p. 547), providing that when it shall be deemed expedient to change an existing street, a resolution must be adopted directing the city engineer to make a survey of the proposed alteration, draw a plat thereof, and submit a written report, which declaration, if considered satisfactory by the council, shall be adopted by ordinance, does not permit the city to delegate the power to determine the nature or extent of any contemplated improvement, except that the engineer, in pursuance of a resolution demanding information as a basis for an ordinance, must report on the question of the advisability of the proposed change; and an ordinance requiring an owner of irrigation ditches in streets to be improved to apply for plans to be prepared by the city engineer, and declaring that a failure of the owner of the ditches to agree to pay the cost of the contemplated changes shall amount to an abandonment of the right to occupy any part of the streets, is invalid, as delegating power to determine plans for the ditches, and the failure of an owner of ditches to demand plans, or to covenant to pay the cost of making the alterations, does not relieve the council from the necessity of adopting an ordinance prescribing generally the kind and size of the pipe or other means considered requisite, and directing the manner of laying it.

DEDICATION—CONVEYANCES—HIGHWAYS.

7. A conveyance by a proprietor of a town site of lots therein, with reference to an existing plat thereof indicating streets as a boundary, is an irrevocable parol dedication of the streets when no express grant thereof to the public has been made, notwithstanding Section 5338, B. & C. Comp., declaring that no covenant shall be implied in any conveyance of real estate.

DEDICATION—CONVEYANCES—HIGHWAYS.

8. Where the federal government resurveyed a town site laid out by an individual on government land, and then sold lots as represented on the map, disclosing lots, blocks, and streets, and the sales were made by officers acting within their authority, the streets were dedicated to a public use, and as long as they were employed for that purpose, they could not become the property of an individual, and no right to interfere with the streets could thereafter be secured from the federal government.

DEDICATION—HIGHWAYS.

9. Where an owner laid out an addition to a town site without noting on the plat of the survey drainage ditches previously dug on the land, he thereby acknowledged that he did not propose to interfere with the streets indicated on the plat in any manner inconsistent with the use thereof by the public, and his act disclosed an intention to assert merely a license by sufferance to employ the water for irrigation in his addition.

MUNICIPAL CORPORATIONS — STREETS — OBSTRUCTIONS — LEGISLATIVE AUTHORITY.

10. In the absence of constitutional inhibition, the legislature may authorize obstructions in the streets of a municipality which, without such sanction, may become nuisances, but statutes of that kind must be strictly construed.

MUNICIPAL CORPORATIONS — CONTROL OF STREETS — CHARTER PROVISIONS.

11. Under Baker City charter (Sp. Laws 1874, p. 151), as originally enacted and as re-enacted by Sp. Laws 1878, p. 192, empowering the board of trustees to remove all obstructions from highways, provided that they shall not interfere with existing improvements within the lines of the streets, the trustees may not interfere with existing drainage ditches on the sides of streets; but the charter does not grant any right to maintain such ditches, but merely recognizes a mere license, revocable at the pleasure of the legislature, and the maintenance of the ditches cannot, while the charter provisions are in force, ripen into title by prescription, because the city may not interfere with them.

MUNICIPAL CORPORATIONS—POWERS—REGULATION OF STREETS.

12. Where a city charter empowers a regulation of the use of streets, the grant is not limited to the mere right to put the streets in order for travel or to keep them in repair, but also authorizes the laying of pipes for gas, water, and other public conveniences.

MUNICIPAL CORPORATIONS—POWERS—REGULATION OF STREETS.

13. Baker City charter (Sp. Laws 1874, p. 151), as amended by Sp. Laws 1878, p. 192, and Sp. Laws 1882, p. 87, defining the powers of the municipal authorities over the streets of the city, does not, either expressly or by necessary implication, authorize the municipal authorities to permit the construction of drainage ditches in any of the streets, and an ordinance granting such a concession is a nullity, and no right is secured thereby.

ESTOPPEL—EQUITABLE ESTOPPEL—MUNICIPAL CORPORATIONS.

14. No estoppel arises from an act of a municipal corporation or its officers done in violation of, or without authority of, law even though money has been expended on the faith of the act.

MUNICIPAL CORPORATIONS—POWERS—REGULATION OF STREETS.

15. Under Baker City charter (Sp. Laws 1903, p. 609) subd. 59, authorizing the city council to regulate, provide for, and prohibit the construction, building, use, or operation of irrigating ditches, on any of the streets of the city, and to provide for the removal of the same, the city council may make such reasonable regulations by ordinance for conducting water along the streets as may be reasonably necessary, and when that has been done an irrigation company maintaining irrigation ditches along the streets must comply therewith.

CONSTITUTIONAL LAW—POLICE POWER—PROPERTY SUBJECT TO.

16. All property is subject to the exercise of the state's police power.

CONSTITUTIONAL LAW—POLICE POWER—SURRENDER OF POWER.

17. The police power of the state is a sovereign prerogaitve which cannot be alienated or ultimately surrendered, because it is essential to the existence and self-preservation of the state.

CONSTITUTIONAL LAW—POLICE POWER—DELEGATION OF POWER.

18. The police power of the state may in part be delegated to, and exercised by, a municipal corporation, which has the power to preserve the health, protect the morals, and promote the safety of its citizens.

CORPORATIONS—POLICE REGULATIONS.

19. A corporation impressed with the performance of a public duty is

subject to police regulations, requiring it to make such reasonable changes in its mode of the use of streets as may be demanded by public necessity.

CORPORATIONS—POLICE REGULATIONS.

20. A corporation furnishing water generally for irrigation only when there is a surplus in its ditches after supplying the needs of its stockholders is impressed with a public character, and holds its property subject to an exercise of the police power of the state to a greater degree than a private person.

From Baker:  WILLIAM SMITH, Judge.

This is a suit by The Baker City Mutual Irrigation Company, a corporation, against Baker City, a municipal corporation, William Pollman, as mayor, O. P. Ison, D. L. Wyatt, A. Hansen, W. H. Shoemaker, E. T. Beers, George Chandler, M. F. Bennett and E. E. Dobbins, as councilmen of Baker City, Jerry White and Warren Construction Company, a corporation.

Motion on defendants appeal to correct defective transcript.                                        ALLOWED.

*Mr. Gustav Anderson* for the motion.
*Mr. Julius N. Hart, contra.*

---

Decided August 3, 1910.

MOTION TO CORRECT TRANSCRIPT.

[110 Pac. 392.]

Opinion by MR. CHIEF JUSTICE MOORE.

1. This is an application to correct a defect in a transcript. It appears by affidavit that the defendants perfected an appeal from an adverse decision, and within the time limited therefor filed with our clerk a transcript, from which was unintentionally omitted a copy of the decree undertaken to be reviewed.

The appellant is required to send up a transcript on appeal, containing copies of the judgment or decree appealed from, of the notice of appeal and proof of service thereof, and of the undertaking on appeal, where-

upon jurisdiction of the cause is secured.  Section 553,
B. & C. Comp.  When, however, it satisfactorily appears
by affidavit that the transcript is incomplete in any par-
ticular, the Supreme Court is authorized to make a rule
on the clerk of the trial court, requiring him to certify
as to such alleged omission, and, if true, to transmit a
copy of the paper so left out.  Section 554, B. & C. Comp.
It has been the constant practice of this court for many
years to construe these clauses of the statute with refer-
ence to each other, and when it has been made satis-
factorily to appear that an appeal was perfected and a
transcript filed in due time, from which some paper,
order, judgment, or decree was inadvertently omitted, to
supply the defect by rule on the clerk of the lower court.
Thus in *Byers* v. *Ferguson,* 41 Or. 77 (65 Pac. 1067 : 68
Pac. 5), a transcript on appeal contained a copy of a
judgment lien docket, instead of a copy of the judgment
complained of, whereupon the defect was remedied in
the manner indicated.

The principle thus announced is controlling, and hence
the clerk of the lower court is directed to send up a
certified copy of the decree from which this appeal is
taken.                                                    ALLOWED.

---

Decided January 10, 1911, rehearing denied April 4, 1911.

## ON THE MERITS.

[113 Pac. 9.]

Statement by MR. JUSTICE MOORE.

This is a suit to enjoin interference with irrigating
ditches in city streets.  The facts constituting the basis
of plaintiff's right and the foundation for its attempted
invasion are that R. A. Pierce caused to be laid out into
lots, blocks, streets, and alleys, a tract of land which he
designated as Baker City, a plat of which was filed in

the proper office October 20, 1865. His right to the land having been contested, it was determined that the United States held the title to the premises, whereupon the Secretary of the Interior caused the lines run by Pierce to be retraced and a plat to be made October 8, 1868, but no express dedication of the streets appears to have been made. The United States, however, sold and conveyed lots in Baker City. J. M. Boyd secured the title to a tract of land joining the city boundary on the north, and in 1870 a ditch was dug from Powder River, a stream flowing northerly east of the platted land, commencing at a point near the southeast corner of the town site, and water thus diverted was conducted in ditches dug along the curbs of streets and furnished for irrigation. At the time of the diversion a ditch was constructed north along what would have been an extension of First Street to land joining the town site on the north, which tract was laid out as Boyd's Addition to Baker City. A plat of this accession was filed February 20, 1872, but no lines appear thereon indicating the location or reservation of any ditches.

When Baker City was incorporated, subdivision 8 of section 2 of article 3 of the charter, prescribing the powers of the board of trustees and authorizing the removal of obstructions from highways, contained a clause as follows:

"Provided, the same shall not interfere with the improvements which now exist within the lines of the streets." Sp. Laws Or. 1874, p. 151.

This proviso was re-enacted when the charter was first amended. Sp. Laws Or. 1878, p. 192. The next amendment, however, omitted the conditional clause. Sp. Laws Or. 1882, p. 87. The charter was again amended, but the alterations are not involved herein. Sp. Laws Or. 1885, p. 244.

D. L. Moomaw having become the owner of the irrigating system, secured the passage of an ordinance, June 5, 1885, permitting ditches to be dug on either side of any street. The possession of the ditches, etc., passed by mesne conveyances to the plaintiff, a private corporation, which furnishes water for irrigation to its stockholders and to others, when the quantity is sufficient for that purpose.

An amended charter (Sp. Laws Or. 1903, p. 595, § 174) authorizes the council of Baker City to improve streets (subdivision 4), to regulate the use thereof (subdivision 42), and to control, provide for, and prohibit the construction, use, or operation of irrigating ditches (subdivision 59). Exercising the power thus delegated, resolutions were adopted by the council declaring a purpose to improve First Street, extending north and south near Powder River, and Center Street, crossing the former street at right angles. Ordinances were passed, pursuant to which contracts were entered into which the defendant the Warren Construction Company, a private corporation, to grade the streets named, put in cement curbs, and lay bitulithic pavement, and, with the defendant Jerry White, to lay on First Street a storm sewer to be connected with catch-basins placed at the corners of intersecting streets.

An ordinance was passed February 7, 1910, and went into immediate effect, providing that if the owner of the ditches desired to continue their use along the streets proposed to be improved, written application should be made to the auditor and clerk within five days from the service of a copy of the enactment, for plans, specifications, and estimates of the cost of construction, the request to contain a covenant that the expenses of the alterations would be paid by the petitioner; that within five days from the receipt of the demand, the city engineer was required to file plans, specifications, and estimates

of the cost of construction with the auditor; and that a failure or refusal of the owner of the ditches to make the request or to agree to pay the cost of the contemplated change within the time limited, should be construed as an abandonment of the right to occupy any part of such streets. A copy of the ordinance was promptly served on plaintiff's agent. Prior to the commencement of the irrigating season of 1910, White began work under his agreement, and, as plaintiff's ditch was dug along the curb on the west side of First Street, the water, if turned into the ditch, would have been diverted by the catch-basins and carried off in the storm sewer, rendering irrigation in that vicinity impracticable.

This suit was instituted April 9, 1910, the complaint setting forth in substance the facts constituting plaintiff's right as hereinbefore detailed, alleging that the interference with the flow of water was such an invasion as necessitated equitable intervention, and praying for a perpetual injunction.

The answer denies the material allegations of the complaint; states the facts respecting the adoption of the resolutions and the passage of the ordinances referred to; admits the making of the contracts specified; and avers that by reason of the delay in objecting to the improvements until after the storm sewer was constructed and the catch-basins were installed, plaintiff is estopped to complain of any injury.

A reply having put in issue the allegations of new matter in the answer, the cause was referred and testimony taken, whereupon the complaint was amended, by interlineation, so as to aver that by reason of the recognition of the right of irrigation by the municipality, it was estopped to deny the existence of such interest, and precluded from interfering with the use of the water. At the same time an amended reply was filed, alleging

that to conduct water under the surface of the pavement would require on First and Center streets pipes ten inches in diameter and impose on plaintiff an expenditure not justified by the profits of the business, thereby rendering its right and property useless and valueless.

Based on such issues and the testimony, findings of fact and of law were made, and the relief prayed for in the complaint was granted, from which decree defendants appeal.                                        MODIFIED.

For appellants there was a brief over the names of *Mr. Gustav Anderson* and *Messrs. Clifford & Correll* with an oral argument by *Mr. Anderson.*

For respondent there was a brief and an oral argument by *Mr. Julius N. Hart.*

MR. JUSTICE MOORE delivered the opinion of the court.

2. The plaintiff was seasonably notified of the enactment of the ordinance, permitting an application to be made for plans and specifications, if a continued maintenance of the ditches along the streets to be improved was desired, but no such request was made, nor was any active hostility to the work of putting in the storm sewer and catch-basins manifested until this suit was commenced. Does the delay of two months during the progress of the work, of which plaintiff was aware, prevent it from obtaining equitable relief?

If plaintiff had derived any special benefit from these improvements (Herman, Estop, § 1221) and with knowledge thereof had waited until their completion before interposing any objections thereto, some reason might well have been assigned for invoking an estoppel from its conduct. Section 787, subd. 4, B. & C. Comp.; *Clinton* v. *Portland,* 26 Or. 410, 38 Pac. 407) ; *Wingate* v. *Astoria,* 39 Or. 603 (65 Pac. 982). The testimony shows, however, that the president of the plaintiff corporation,

at a conference with the councilmen at their chambers, objected to, and protested against, a destruction of any part of the irrigating system. The plaintiff could act only by agents, and its proper representative did not stand by and passively encourage an alteration, but opportunely notified the council of its claim and declared against any invasion of its rights, thereby negativing any reliance on its supposed acquiescence, and such being the case, no foundation exists for an equitable estoppel.

3. It is possibble that when the cost of making any public improvement is to be defrayed by uniform taxation in a municipality, the need of particularity in specifying the nature and kind of alterations to be made is not so imperative as when the burden is to be imposed on the immediate property benefited, or when the owner thereof is personally obliged to pay the expense of the proposed work. In the latter cases it is essential that the ordinance or resolution providing for the improvement contemplated should definitely specify the general character and extent of the enterprise, and if the declaration of the council in relation thereto is so vague and uncertain as not to be susceptible of performance, the enactment must be adjudged inadequate. Elliott, Roads and Streets (2 ed.) § 517; *Otis* v. *City of Chicago,* 161 Ill. 199 (43 N. E. 715); *Holden* v. *City of Chicago,* 172 Ill. 263 (50 N. E. 181); *Haegele* v. *Mallinckrodt,* 46 Mo. 577.

4. The power of a municipality to make public improvements must be found in the charter conferring the right, either by an express grant of authority or by necessary implication: *Beers* v. *Dallas City,* 16 Or. 334 (18 Pac. 835); *MacDonald* v. *Lane,* 49 Or. 530 (90 Pac. 181); *Naylor* v. *McColloch,* 54 Or. 305 (103 Pac. 68).

5. As such power is delegated, the council is governed by the rule that persons to whom an office is committed

cannot lawfully intrust to another the discharge of the duty thus reposed, when it involves an exercise of discretion and judgment, unless such permission is expressly granted. Elliott, Roads and Streets (2 ed.) § 518; 20 Am. & Eng. Enc. Law (2 ed.) 1217; 28 Cyc. 276. Thus in *Ruggles* v. *Collier*, 43 Mo. 353, 365, Mr. Justice WAGNER, in discussing this subject, comments as follows:

"There is a clear distinction to be observed between legislative and ministerial powers. The former cannot be delegated; the latter may. Legislative power implies judgment and discretion upon the part of those who exercise it, and a special confidence and trust upon the part of those who confer it."

So, too, in *City of St. Louis* v. *Clemens*, 43 Mo. 395, a charter empowered the council to put in sewers of such dimensions as might be prescribed by ordinance. Pursuant to the authorization an ordinance was passed providing for the construction of a sewer "of such dimensions and of such materials as may be deemed requisite by the city engineer," and it was ruled that the council could not delegate a duty thus plainly and expressly devolving upon them to the mere discretion and caprice of a single individual.

6. The charter of Baker City, in force when the improvement involved herein was undertaken (Sp. Laws Or. 1903, p. 547), provides generally that whenever it shall be deemed expedient to change an existing street, a resolution must be adopted directing the city engineer to make a survey of the proposed alteration, draw a plat thereof and submit a written report, which declaration, if considered satisfactory by the council shall be adopted by ordinance. Chapter 9, § 107. A careful examination of the charter last referred to fails to disclose any provision permitting the delegation to any person of power to determine the nature or extent of any contemplated public improvement, except that the engineer, in pur-

suance of a resolution demanding information as a basis for an enactment, must report upon the question of the advisability of the proposed change. The ordinance relating to the ditches mentioned is not sufficiently specific to impose the burden of making any alteration in the irrigating system on the owner thereof, nor were the plans, specifications, or estimates that might thus have been made binding on the plaintiff, until the same were filed with the auditor, adopted by the council, and evidenced by an ordinance to that effect, which does not appear to have been done, and by reason thereof the defendants were properly restrained from interfering with the ditch and water right.

The failure of plaintiff to demand plans of, or specifications for, the conduit or to covenant to pay the cost of making the alterations did not, in our opinion, relieve the council from the necessity of adopting an ordinance prescribing generally the kind and size of the pipe, tube, or other means considered requisite, and directing the manner of laying it. It is quite probable that, if any request had been made by plaintiff's agents, an ordinance would have been enacted ratifying the plans, etc., and adopting the report of the engineer. The initiation of any change in the manner of carrying or distributing the water was, by the ordinance enacted, imposed on plaintiff. If the installation of the irrigating system had been desired on streets which had not theretofore contained ditches, the method adopted might have been proper, but where, as in the case at bar, the ditches were already in existence and capable of conducting water which had previously been used for a beneficial purpose, we think the duty of inaugurating a change in the method of irrigation devolved on the council. It is certain, we think that any plans, specifications, or estimates which might have been made respecting the proposed alteration

would not have been coercive on plaintiff until the substance thereof had been incorporated in an ordinance.

It is not believed that the interest in the system of irrigation has become so paramount as to demand a perpetual injunction, if proper methods are adopted and carried into effect to regulate the kind and size of the conduits and to control the use of the water, and such being the case, the nature and extent of plaintiff's title will be examined. The trial court found, *inter alia,* as matters of law, that authority to dig ditches and appropriate water for irrigation was secured by prescription and also obtained by the ordinance of June 5, 1885, whereby the interest had become a vested right; and that the municipality is estopped from interfering therewith, except that, as a conduit for the water, pipes may be laid in lieu of ditches if the expense thus to be incurred were paid by general taxation. The deduction thus reached was evidently based on the principle announced in the case of *Denver* v. *Mullen,* 7 Colo. 345 (3 Pac. 693), where it appeared that streets had been laid out in Denver, Colorado, on that part of the public domain which was subsequently known as the "congressional grant." That city was incorporated in 1861 and control of the streets was given by charter to municipal officers. A canal extending across the streets then laid out, commenced in 1864, was completed the following year. Pursuant to an act of Congress, permitting a purchase of public land in trust for a town site (Act May 28, 1864, c. 99, 13 Stat. 94), a certificate of entry of the congressional grant was given May 6, 1865, and a patent for the premises was issued June 8, 1868, embracing the land included in the original town site. Seven or eight years after the canal was completed Hunt's addition to Denver was made and the plat showed streets that were intersected by the canal, the right of way for which had been secured from the owners of land that had been

crossed thereby. The water flowing in the canal was used in the original town site to operate flouring mills. Mullen and others who were interested in the mills were requested by the municipal officers to build bridges where the streets were thus crossed, and upon their refusal to comply with the demand, an attempt was made to turn the water back into the stream from which it was taken to prevent which interference a perpetual injunction was secured.

In respect to Hunt's addition, it was held that when a municipal corporation accepts the dedication of streets, across which a canal had previously been located and rights of way therefor secured the donation was taken subject to the prior right of the owners of the conduit; and if public necessity demanded the building of bridges on the streets where crossed, the duty devolved solely upon the city. It was further ruled that though control of the highways had been conferred by charter on the municipal officers, such authority could not be extended so as to invalidate a subsequent acquisition by the canal proprietors of a right of way through lands which were then part of the public domain, and prior to securing a title by the city, notwithstanding the streets had previously been laid out and used as highways.

The rule thus declared was reaffirmed in suits affecting the claims of the owners to maintain the canal in question: *Platte & Denver Ditch Co. v. Anderson,* 8 Colo. 131 (6 Pac. 515) ; *Walley* v. *Platte & Denver Ditch Co.,* 15 Colo. 579 (26 Pac. 129) ; *Platte & Denver Canal & Milling Co.* v. *Lee,* 2 Colo. App. 184 (29 Pac. 1036). In *Platte & Denver C. & M. Co.* v. *Dowell,* 17 Colo. 376 (30 Pac. 68), their rights were again the subjects of judicial inquiry. In that case a statute of Colorado required the owners of ditches of certain size to defray the cost of covering them, so as to protect the lives and property of inhabitants, and thereafter, at their own

expense, to keep the conduits covered and in good repair. The plaintiff in error, a private corporation, failed to comply with the statute. A boy was drowned in the canal, and in an action to recover the damages sustained, it was held that a private corporation, like an individual, must submit to an exercise of the police power, employed in the interest of the welfare of society, even though such regulation might operate to the injury of the business authorized, and tended to diminish the value of the property employed therein, and that the omission to perform the statutory duty was negligence *per se,* justifying a recovery of the indemnity, in the absence of any proof of contributory negligence.

If it be conceded that the decisions referred to are accurate interpretations of legal principles governing such cases, it is believed that the conclusions thus reached are not applicable to the facts involved herein. In the case of *Denver* v. *Mullen,* 7 Colo. 345 (3 Pac. 693), it will be kept in mind that the construction of the canal was commenced before the certificate of entry of the land was issued. Whether or not the certificate was given before the canal was completed cannot be determined from the facts stated in the opinion. But however that may be, as the finishing of the conduit and the appropriation of the water related back to the initiation of the enterprise (*Nevada Ditch Co.* v. *Bennett,* 30 Or. 59, 85: 45 Pac. 472: 60 Am. St. Rep. 777), the canal was evidently dug across the public domain of the United States, though such lands may theretofore have been laid out into lots and blocks by persons asserting some right to the premises. At the time the certificate of entry in that case was given, the act of Congress of March 3, 1863, was in force, requiring a survey of a reservation of a town site on public land to be made under direction of

the Secretary of the Interior. Act March 3, 1863, c. 80, § 2, 12 Stat. 754 (U. S. Comp. St. 1901, p. 1455, § 2381). The entry, however, was not secured by a compliance with the provisions of that statute, but in pursuance of a special act of Congress (13 Stat. 94) which was an enlargement of the scope of an earlier law. Act May 23, 1844, c. 17, 5 Stat. 657. It is obvious that no resurvey of the town site of Denver was ever made by direction of the Secretary of the Interior, as is generally required in such cases (U. S. Comp. St. 1901, § 2381), for if that had been done, each lot or subdivision of land would have been treated as an integral part, and patents therefor would have been issued by the United States to the several purchasers, as was done in the case at bar, for certified copies of patents were received in evidence showing that on January 15, 1875, and November 20, 1880, the United States granted to James H. Parker and to Jerusha Shockley, respectively, lots in Baker City. The patent in the Mullen Case, however, was issued June 8, 1868, showing conclusively that the description of the entire town site was embraced in the conveyance, which grant was evidently made to some person in trust for the several purchasers of lots in Denver, and not to each severally.

7. Though our statute declares that no covenant shall be implied in any conveyance of real estate (Section 5338, B. & C. Comp.), it has repeatedly been held by this court that a sale and conveyance by a proprietor of a town site of lots therein, with reference to an existing plat of the premises, indicating streets as a boundary, amounted to an irrevocable parol dedication of the highways, when no express grant thereof to the public had been made. *Steel* v. *Portland,* 23 Or. 176 (31 Pac. 479); *Spencer* v. *Peterson,* 41 Or. 257 (68 Pac. 519, 1108); *Nodine* v. *Union,* 42 Or. 613 (72 Pac. 582); *Oregon City* v. *Or. & Cal. R. Co.,* 44 Or. 165 (74 Pac. 924); *Christian* v.

Sig. 11

*Eugene,* 49 Or. 170 (89 Pac. 419). In *Carter* v. *Portland,* 4 Or. 339, 347, it is said: "The law is, that a parol dedication is not a grant; it is a right created in favor of the public, and is in the nature of an estoppel *in pais.* There need be no grantee *in esse* to take the fee, nor is it essential that the legal title should pass from the owner." In *Steel* v. *Portland,* 23 Or. 176, 183 (31 Pac. 479, 480), Mr. Justice BEAN observes: "The sale and conveyance of lots according to such plan or map implies a covenant that the streets and other public places designated shall never be appropriated by the owner to a use inconsistent with that represented by the map upon the faith of which the lots are sold." As illustrating this legal principle, see, also, Elliott, Roads and Streets (2 ed.), § 123; *United States* v. *Chicago,* 7 How. 185 (12 L. Ed. 660); *Irwin* v. *Dixion,* 9 How. 10 (13 L. Ed. 25); *State* v. *Trask,* 6 Vt. 355 (27 Am. Dec. 554).

8. When the lots, blocks, streets, and alleys in the original town site, as laid out by Boyd, were retraced in 1868, under the direction of the Secretary of the Interior, and the resurvey was evidenced by a map on which streets were designated, such highways were dedicated to a public use, and so long as they were employed for that purpose they could not become the property of an individual. *New Orleans* v. *United States,* 10 Pet. 662 (9 L. Ed. 573). The sale of these lots and the issuing of patents therefor were made by officers of the United States, who were acting within the scope of their authority, whereby the sovereign was estopped by the performance of a duty by its agents (Herman, Estop. § 676), so that, after the resurvey of the streets, no right to interfere therewith could have been secured from the general government.

9. The streets in the original town site of Baker City having thus been set apart by the United States for a public use two years before any attempt was made to

secure an easement in the highways, the principle announced in *Denver* v. *Mullen,* 7 Colo. 345 (3 Pac. 693), is not controlling herein. When Boyd, in 1872, laid out his addition, without noting on the plat of the survey the ditches dug on the land in 1870, he, by making such map, solemnly acknowledged that he did not propose to interfere with the streets in any manner inconsistent with the use thereof by the public. *Steel* v. *Portland,* 23 Or. 176 (31 Pac. 479). His action in this respect evidences an intention to assert only a license by sufferance to employ the water for irrigation in his addition, and from such conduct it is reasonable to infer that he did not design to claim any greater right to the use of the ditches and of the water in the original town site.

10. It is also fair to assume that as the charter of Baker City of 1874, and the amendment thereof in 1878, empowering the board of trustees to remove obstructions from the streets, exempted from the operation of the authority conferred the improvements then existing within the lines of such highways, the exception mentioned related to the ditches in question. The legislature, in consequence of its paramount control of the highways of a state and as the representative of the public at large, may, in the absence of any constitutional inhibition, authorize any legitimate obstructions in the streets of a municipality which, without such sanction, might become nuisances, but enactments of that kind are strictly construed. Dillon, Mun. Corp. (4 ed.) § 657; Elliott, Roads and Streets (2 ed.) § 651; *Pennsylvania R. Co.'s Appeal,* 115 Pa. 514 (5 Atl. 872) ; *Cogswell* v. *New York R. Co.,* 103 N. Y. 10 (8 N. E. 537: 57 Am. Rep. 701). Interpreting in the manner indicated the clause of the charter prohibiting interference with improvements within the lines of the streets, such reservation does not purport to be a grant of any right, nor anything more than a recognition of a mere license, revocable at pleasure

(*Reading* v. *Commonwealth,* 11 Pa. 196: 51 Am. Dec. 534), which privilege is compatible with Boyd's original design, as evidenced by a failure to note on the plat of his addition any ditches as a reservation, and precludes an assertion of any adverse interest. Tyl. Eject. 879.

11. It will be remembered that the amendment of the charter in 1882 omitted the restriction adverted to, thereby permitting the trustees, for the first time after the incorporation of the city, to protect its rights against infringement, and as the doctrine of adverse enjoyment is predicated upon the principle of acquiescence by the party upon whom devolves the duty of repelling the invasion, it would be unreasonable to hold that while the trustees were prevented from interfering with the ditches from 1874 until 1882, any hostile interest could be asserted, and particularly so when, during that time, the irrigating system was maintained in accordance with and pursuant to an implied legislative sanction. This legal principle is too elementary to require the citation of any authorities in support thereof. We conclude that no right to use water for irrigation in the city was initiated by adverse claim or secured by prescription.

After the amendment of the charter in 1882, and another alteration thereof was made without restoring the reservation of 1874 or that of 1878 (Sp. Laws Or. 1885, p. 244), D. L. Moomaw, the then owner of the irrigating system, evidently realizing that the right to continue the use of the water for that purpose was precarious, secured the passage of an ordinance, June 5, 1885, permitting the construction of ditches on either or both sides of any street in Baker City.

12. A careful examination of the various sections of the original charter, as amended, and which clauses were then in force, fails to show any express grant of power by the exercise of which the digging of ditches in any of the streets could have been permitted, and we do not

think such prerogative is necessarily or fairly implied
from or incident to the authority then vested in the trus-
tees.    Dillon, Mun. Corp. (4 ed.) § 89.    Where a city
charter empowers a regulation of the use of streets, the
grant is not limited to the mere right to put the highways
in order for travel or to keep them in repair, but author-
izes the laying of pipes for gas, water, and such other
conveniences as the public may require: *Belcher Sugar
Refining Co.* v. *St. Louis Grain Elevator Co.*, 82 Mo. 121;
*Farrenbach* v. *Turner*, 86 Mo. 416 (56 Am. Rep. 437) ;
*Julia Building Ass'n* v. *Bell Telephone Co.*, 88 Mo. 258
(57 Am. Rep. 393).    The principle thus adverted to,
however, is inapplicable herein, for the charter in force
at the time stated did not empower even the regulation
of the use of any streets or highway.    Dillon, Mun. Corp.
(4 ed.) § 89.

13. The trustees not having been authorized to permit
the construction of ditches in any of the streets, the
ordinance of June 5, 1885, attempting to grant such con-
cession, was a nullity, and no vested right was secured
by the enactment.

14. It has been held that no estoppel can arise from
an act of a municipal corporation or its officers when
done in violation of, or without authority of law, even
when money has been expended on the faith of the sup-
posed license:    *Day* v. *Green*, 4 Cush. (Mass.) 433;
*Seeger* v. *Mueller*, 133 Ill. 86 (24 N. E. 513) ; *Stevens* v.
*St. Mary's Training School*, 144 Ill. 336 (32 N. E. 962:
18 L. R. A. 832: 36 Am. St. Rep. 438) ; *Pettis* v. *John-
son*, 56 Ind. 139.    But whatever the rule may be in such
cases, it is unnecessary to inquire whether or not a valid
license to dig ditches in or along any of the streets of
Baker City was secured, or that the privilege, if it ever
existed, can be canceled or is irrevocable, for nothing
more than a mere regulation of the use of the irrigating

system on First and Center streets was attempted by the passage of the ordinance of February 7, 1910.

15, 16. The council having been expressly authorized "to regulate, provide for, and prohibit the construction, building, use, or operation of irrigating ditches, or other ditches, on any of the streets, lanes, alleys, avenues, or boulevards of Baker City, and to provide for the removal of the same" (Sp. Laws Or. 1903, p. 609, subd. 59), and having undertaken to regulate such use, the right to do so will be examined. All property is held subject to an exercise of the police power.

17. And though such force is a sovereign prerogative which cannot be alienated or ultimately surrendered, and is essential to the very existence and self-preservation of a state, a part of such power may be delegated to, and exercised by, a municipal corporation: *Portland* v. *Cook*, 48 Or. 550 (87 Pac. 772: 9 L. R. A. (N. S.) 733).

18. The employment of a measure of this power has been commensurate with the growth of modern ideas, is based on the ground of necessity, and is governed by the maxim *"Salus populi suprema lex."* The right of a municipality to exercise such power to preserve the health, to protect the morals, and to promote the safety of its citizens has long been settled by repeated adjudications.

19. Any corporation impressed with the performance of a public duty is subject to police regulations, requiring it to make such reasonable changes in its mode of the use of highways as may be demanded by public necessity. Elliott, Roads and Streets (2 ed.) § 75. Thus a railroad embankment was made on land which, although at that time without the corporate limits of a city, was subsequently included therein. A street was thereafter laid out across the embankment, but as the fill obstructed continuous travel along the street, condemnation proceed-

ings were instituted and damages were awarded for injury to an easement in the land, and for the cost of the embankment where it was intersected by the street. No allowance, however, was made for the expenses to be incurred in building a bridge over the highway. The judgment thus rendered was upheld on appeal; the court holding that under an exercise of the police power, no recompense could be made for losses thereby sustained: *Cincinnati R. Co.* v. *City of Connersville,* 170 Ind. 316 (83 N. E. 503). A writ of error having been taken to the Supreme Court of the United States, the decision was affirmed. In deciding that case Mr. Justice HARLAN, speaking for the court, said:

"The railway company accepted its franchise from the state, subject necessarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their character, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and which might, from time to time, be established by the municipality, when proceeding under legislative authority within whose limits the company's business was conducted." *Cincinnati R. Co.* v. *City of Connersville,* 218 U. S. 336 (31 Sup. Ct. 93).

So, too, a water company, by virtue of a contract with a city in which it operated, obtained authority to make certain alterations and improvements, and, acting on the permission granted, laid its pipes and located certain water gates within the limits of the streets, near the edge of the sidewalk as then existing. Subsequently the city proposed to widen the sidewalk and put down granite curbing, and directed the company to move the gate boxes and place them outside the curbing, which was done. In an action to recover the cost of complying with this order, it was held that when the company placed its water gates in the streets under the terms of the contract, it did so

subject to the right of the city to make such changes in the surface of the street and the alignment of the sidewalk as might be necessary to render the street safe and convenient for public travel, and that whenever it became necessary to change the location of the water boxes, by reason of repairs or improvements in the street, it was the duty of the company to make the alteration at its own expense: *Belfast Water Co.* v. *City of Belfast,* 92 Me. 52 (42 Atl. 235). To the same effect, see, also, *Water Co.* v. *City of Rockland,* 83 Me. 267 (22 Atl. 166), and *National Waterworks Co.* v. *City of Kansas* (C. C.) 28 Fed. 921.

20. Though plaintiff furnishes water generally for irrigation only when there is a surplus in its ditches after supplying the needs of its stockholders, it is, in our opinion, a corporation impressed with a public character, and holds its property subject to an exercise of the police power of a state to a greater degree than a private person. It would be improper to conclude that because a corporation, for a consideration, provides the means of communication, or furnishes transportation, or supplies heat, light, power, or water to its stockholders only, that it is not engaged in performing a public service, and hence entitled to great exemption, for such a holding might result in making subscriptions to capital stock a condition precedent to the obtaining of any utility from a *quasi* public service corporation. The council of Baker City are empowered by the charter now in force to make such reasonable regulations by ordinance for conducting water along the streets as may be prescribed, and when this has been done the plaintiff must accede thereto.

It follows from these considerations that the decree will be modified so as to enjoin the defendants, their agents, servants, etc., from interfering with plaintiff's irrigating system until it has been regulated in the man-

ner indicated, when the restraining order will be dissolved.                                              MODIFIED.

Mr. Chief Justice EAKIN and Mr. Justice MCBRIDE concur.

Mr. Justice SLATER and Mr. Justice KING having been succeeded by Mr. Justice BEAN and Mr. Justice BURNETT, neither of them took any part in this decision.