Richmond, P. J.,
delivered the opinion of the court.
The plaintiff, a corporation under the laws of this state, by its complaint alleges in substance as follows:
That it has now under its control and in operation a ditch constructed by the Platte and Denver Ditch Company in the year 1864; that the ditch was constructed for the purpose of furnishing water for milling, manufacturing and irrigation.
That the company, by prior occupation and appropriation, acquired the right of way and easement along the route of said ditch through the city of Denver, where the said ditch now runs; that the lands within the limits of the city of Denver through which the ditch was constructed were, at the time of the construction, a part of the. public domain, and so remained a part of the public domain until long after the construction of said ditch.
That the rights of the city of Denver or the inhabitants thereof, if any, were acquired subject to the prior vested rights of the Platte and Denver Ditch Company.
That all lands acquired by the city and the inhabitants thereof were subject to the rights and privileges of the company:
That the Platte and Denver Ditch Company, prior to the time of the expiration of its charter, leased certain water *186 rights to divers and sundry persons, some of which water rights to be perpetual leases for milling purposes, and that the lessees and their assigns relied upon these leases and constructed large flour mills to be operated by the water power thus leased, and the water from the ditch has been for many years used for the purpose of operating the machinery of said mills, and cannot be dispensed with except at ruinous loss.
That the Platte and Denver Ditch Company, by proper conveyances, in the year 1881, conveyed its ditch and right of way together with its rights, privileges and appurtenances to the plaintiff company; that one of the chief considerations for the conveyance was that the plaintiff was to keep good the contract or lease of water rights and power theretofore made.
That the Platte and Denver Ditch Company, as well as the plaintiff, kept the ditch in good order and repair, and have maintained and kept the same without any negligence whatever.
It is further set up that in a certain cause entitled The City of Denver v. Mullen, the district court, in and for the county of Arapahoe, granted a decree to the effect that as to the city of Denver the plaintiffs were lawfully and of right entitled to the full and unobstructed flow of water through and along the Platte and Denver ditch to the mills of the plaintiffs, without any let or hinderanoe or obstruction of the water in said ditch, and without any interference with said ditch by the city of Denver or its agents or emplojmes; and therein and by the said decree enjoined the city of Denver, its agents, attorneys and employees from in any wise or manner interfering with the ditch or water therein.
Subsequently the decree entered in said cause was affirmed in the supreme court.
That thereafter in another cause, entitled Anderson v. The Platte and Denver Ditch Company, the rights of the owners and operators of the ditch were sustained.
That on or about the 25th day of February, 1888, plaintiff *187 received the following notice from the mayor of the city of Denver: “You are hereby notified to comply with the order of the city council of the city of Denver, as expressed in Ordinance No. 10, 1888, passed and approved the twenty-first day of February, A. D. 1888, in this, to-wit: To confine the channels of the ditches operated and controlled by you to the width and depth in said ordinance specified, and so to construct the same as to prevent washing and cutting away of the property along the lines of said ditches. Upon failure to comply with said requirements and upon failure to begin the said work within ten days from the receipt of this notice you will be proceeded against according to law.
“ William Scott Lee, Mayor.”
The ordinance referred to reads as follows:
“ A bill for an ordinance to change the construction of the ditches operated and controlled by The Platte and Denver Ditch and Milling Company within the limits of the city of Denver.
“ Be it enacted by the city council of the city of Denver.
“ Section 1. Whereas in the opinion of the city council of the city of Denver, the public welfare and safety require there should be a change in the present construction of the ditches operated and controlled by The Platte and Denver Ditch and Milling Company within the limits of the city of Denver, the said Platte and Denver Ditch and Milling Company is hereby ordered to so confine and construct the channels of their said ditches by boxing, fiuming or otherwise, as to prevent the further washing and cutting away of the property along the lines of the said ditches, and to reduce their said channels to a maximum width of eight feet for each of their said ditches, and a maximum width of not to exceed sixteen feet where the waters of both said ditches flow in one channel, viz. from Mullen’s mill, in West Denver, thence running in a northerly direction to a point where the waters of both said ditches empty into the South Platte river, and to a depth sufficient only to carry the necessary water for all purposes of said The Platte and Denver Ditch *188 and Milling Company, pursuant to section 4 of an ordinance entitled, ‘ Ordinance No. 38, 1886, Ditches and Flumes for Manufactories ’ passed and approved the 22nd day of March, A. D. 1886.”
Section 4 of ordinance No. 38 reads as follows:
“ Section 4. All persons or corporations, making, constructing, owning or using any ditch, flume, bridge or crossing as aforesaid, shall keep the same in good repair whenever so required to do by said city, and all ditches, flumes, bridges and crossings shall be located, constructed and built under the supervision of said city, or some officer of said city duly authorized to superintend the same, and the city council shall have the right and power to order, from time to time, such changes in the location and construction of the same as in their opinion the public welfare and safety require; and every such person or corporation who shall neglect, fail or refuse to comply with the requirements of this article, or to obey any order of said city in reference to the same after ten days’ notice in writing, signed by the mayor, has been served on such person or corporation, shall, upon conviction thereof, be fined in a sum of not less than fifty dollars nur more than one hundred dollars, and shall be liable to be prosecuted for every day such person,- persons or corporations shall neglect, fail or refuse to comply with the requirements or provisions of this article, or the requirements of said city council, as distinct-and separate offenses, and upon conviction be fined as aforesaid.”
To this complaint a demurrer was interposed and sustained. Plaintiff elected to stand by its- complaint and prosecutes this appeal.
Practically but two questions are presented for our consideration : Are the ordinances invalid. Has the chancery court power to pass upon the invalidity of the ordinances and enjoin the city and its authorities from- prosecuting the plaintiff for violation thereof.
It is contended by counsel for appellees that the above re *189 cited section is valid and clearly within the police power of the municipality. We cannot subscribe to that view.
“ The construction of statutes by which it is determined whether they contravene constitutional provisions or not, frequently requires nice discrimination between matters which concern private rights and such as affect the public weal; between matters in which the private interest is immediate and the public interest remote, and such as interest the public directly and individuals incidently. The taking of property, or the legislative interference with private rights, as a police regulation, must have for its immediate object the promotion of the public good, in the broadest sense.”
Upon a review of the authorities and upon principles consistent with “ the genius of our free institutions and the constitutional guarantees of rights,” it may be fairly deduced that the tests of all police regulations affecting proprietary rights are: Whether they are enacted in the real interest of the public, and whether the public interests are sought to be subserved by appropriating to public use private property otherwise than in the exercise of the right of eminent domain. In judging whether or not a statute falls within the first class, we have a wide field of inquiry. We may determine whether the provisions of the act are such as to be essential to the public good, or only impose harassing burdens upon individuals; whether the statute, on pretense of serving the public, diminishes the property of one man to augment that of another; and whether the subject of regulation includes things in which the public have no interest, or rights in no way antagonistic to the general good.
There is no safer method of arriving at the object of the statute than to ascertain the purpose it may be used to sub-serve. When we come to consider the extent to which these ordinances may be made to operate, we are led to believe that it would be dangerous to say that the city council could assume the power to abridge previously acquired rights of the ditch company. Ordinance No. 10 is defined as an ordinance to change the construction of the ditches operated and con *190 trolled by The Platte and Denver Ditch and Milling Company, and the section recites that in the opinion of the city council the public welfare and safety require there should be a change in the present construction of the ditches operated and controlled by The Platte and Denver'Ditch and Milling Company within the limits of the city * * * and it is hereby ordered to so confine and construct the channels of their said ditches by boxing, fluming or otherwise, as to prevent the further'washing and cutting away of the property along the lines of said ditches, and to reduce their said channels to the maximum width of eight feet for each of their said ditches, and a maximun width of not to exceed sixteen feet where the waters of both of said ditches flow in one channel.
The mere recitation in the ordinance that the “ public welfare and safety ” require this to be done is not binding upon the court. We are warranted in going beyond this recitation and inquiring what the evident purport is. Certainly the title of the ordinance is inconsistent with the recitation ; the purpose for which the ordinance was passed is equally inconsistent with the recital. It evidently contemplated a change in the construction, reducing the width of the ditch or ditches operated by the complainant company, and also that such changes and reconstruction of the ditch should be made for the purpose of preventing the further washing and cutting away of the property along the lines of the same.
This means, then, in substance that the city by this ordinance is seeking to protect the property rights of individuals along the lines of the ditch or ditches acquired subsequent to the construction of the ditch and subjected to the rights of the company. It is nowhere indicated by the provisions of the ordinance in what way the public welfare and safety can thus be benefited or protected, and we are unable to conceive how public interests can be promoted by reducing the width or depth of the ditches, or changing the construction of the ditches, or protecting the banks of the ditches, as specified in the ordinance.
*191 In Mugler v. Kansas, 123 U. S. 661, this language is used: “ The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty — indeed, are under a solemn duty — to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safetj', has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution.”
This doctrine applicable to a legislative act is equally applicable to an ordinance like the one under consideration.
It will be observed that this section of the ordinance was passed by the city council for the purpose of bringing the complainant company within the provisions of section 4 of ordinance No. 38, which provides a penalty for the violation of an order or notice issued by the mayor upon any person or corporation failing to comply with such order or notice, and was so passed in pursuance to the authority conferred upon the city council by section 4.
Section 10 was passed two years subsequent to section 4.
Section 4 provides for the making, constructing, and using of ditches, flumes, bridges and crossings, and for the location, construction and building of them under the supervision of some city officer, conferring upon the city council power from time to time to change the location and construction of the same, as in their opinion public welfare and safety may require. In addition to .this, for the mayor to duly notify the person or corporation.
The mayor did so notify the complainant company and threatened prosecution if the company neglected to comply with the provisions of section 10 of the ordinance, to wit: confine their ditch by some means or other so as to prevent the further washing and cutting away of property along the line of the same, and to reduce their ditches in width. A *192 failure to comply with this provision would, under the ordinance, subject the complainant company to daily prosecutions and fines of not less than fifty dollars nor more than one hundred dollars.
By the demurrer to the complaint it is admitted that the ditch in question was originally constructed through lands embraced within the public domain, and belonging to the United States prior to said lands being embraced within the city limits. City of Denver v. Mullen et al., 7 Colo. 346 ; Platte & Denver Ditch Co. v. Anderson, 8 Colo. 132 ; Walley v. Platte & Denver Ditch Co. et al., 15 Colo. 379.
The foregoing reasons, coupled with the doctrine embraced in the above cited cases, lead us to the conclusion that the ordinances in question, so far as they affect the complainant company, are invalid and void.
This brings us to the consideration of the second question : Can the court enjoin the defendants from prosecuting the complainant company for violation of the ordinances ?
It may be admitted that equity would not enjoin the action of municipal corporations while proceeding within the limits of their well defined powers as fixed by law; yet it is claimed that it has undoubted jurisdiction to restrain them from acting in excess of their authority, and from the commission of acts which are ultra vires. High on Injunctions, §241.
It is a well recognized principle that courts of equity will grant an injunction to protect a party against a multiplicity of suits.
Under the ordinance in question, as before stated, the representatives of the complainant company would be subject daily to arrest for a failure to comply with the order of the mayor. And should they successfully present their defense in such a proceeding, it does not follow that they would not be continuously harassed by repeated arrests for the violation of ordinances which we have herein declared invalid. And pending the final determination of the validity of this ordinance or the completeness of the defense, innumerable *193 actions might he commenced against them, thus subjecting them to great expense, inconvenience and embarrassment.
In the case of Smith v. Bangs et al., 15 Ill. 339, Treat, C. J., lays down the following doctrine :—
“ A court of equity will interfere by injunction where public officers under claim of right are proceeding illegally to impair the rights or injure the property of individuals or corporations, or where it is necessary to prevent multiplicity of suits. Where a municipal corporation is seeking to enforce an ordinance which is void, a court of equity has jurisdiction at the suit of any person who is injuriously affected thereby to stay its execution by injunction. Mayor of Baltimore v. Radecke, 49 Md. 218.
We do not look upon this proceeding on the part of the city to impose a penalty for the violation of the ordinance as coming within the scope of the authorities holding that equity will not interfere by injunction to prevent criminal prosecution for violation of illegal ordinances or statutes; but rather incline to the belief that the imposition of a penalty is for the purpose of compelling the complainant to comply with the ordinance by reducing the width of its ditches and to protect the banks of such ditches. It is true that the ordinance imposed a fine for disobedience of the order after ten days’ notice, but nevertheless this must be considered in conjunction with section 10, which seeks to impose duties upon the complainant company wholly unwarranted, and which clearly infringes upon the vested rights, of the company.
In the case of Cape May & Schellenger’s R. R. Co. v. City of Cape May, 35 N. J. Equity, 409, this language is used':.Whatever doubts may have before existed, respecting the power of the courts to control the acts of the municipal-corporations, they seem now to be at rest, and the line defining in what cases they may intervene, and in what they should not, seems to be marked distinctly and with precision. The rule upon this subject is stated with perspicuity by Judge Dillon, as follows: — “ There can, ordinarily, be no *194 judicial restraint or interference with the bona fide exercise of powers, legislative or discretionary in their nature, and which do not violate private rights.” Dillon on Mun. Corp. (8d ed.) § 908.
Chancellor Zabriskie, in speaking upon the same topic, says: “ All; legislative acts, or exercise of discretionary powers, within their authority, are beyond the control of the courts, however unwise, or impolitic, or even when done from corrupt motives, or for unworthy purposes. Their legislative powers are', when exercised within their authority, supreme. But when the corporation have fulfilled their legislative functions, and have exercised their legislative discretion — and are about carrying their legislation into execution, then, if the effect of their acts is to violate vested rights or inflict irreparable wrong, the courts may properly intervene.”
There is no difficulty whatever in applying this rule to the case in hand. It falls indeed directly within it. The provisions of ordinance No. 10 is aimed specifically at complainant in this case. It seeks to compel it to do certain acts which, from the very nature of things, violate vested rights which have received recognition in the supreme court of this state. City of Denver v. Mullen et al., supra.
“The question of the degree of interest in the subject-matter which is requisite to render one a proper party plaintiff, to institute an action for the purpose of restraining misconduct on the part of municipal corporations on their officers, is one of much practical importance and deserving of special attention. In general it may be said that to warrant the interference of equity in this class of cases, the aggrieved party must show that some special and peculiar injury, personal to himself, is likely to result from the act complained of, aside from the general injury to the public.” High on Injunctions, § 1298.
What- then is the situation of the parties to. this proceeding? The company insist that they have, acquired, by virtue of 'their location and construction of this ditch and by virtue' of legislative authority, vested rights as against the city and *195 its inhabitants. The supreme court of this state in three different decisions have upheld this assertion’.
The city of Denver by a general ordinance applicable to corporations of a similar nature, to be .created and those already in existence, have provided by ordinance that such corporations shall keep their ditches in good repair whenever so required to do, and all such ditches, flumes, bridges and. crossings shall be located, constructed and built under the supervision of the city or some officer of said city duly authorized to superintend the same. And that the city council shall have the right and power to order from time to time changes in the location and construction of the same as in. their opinion the public welfare and safety require. And further that every person or corporation who shall fail or refuse to comply with the requirements of the ordinance or ,to . obey any order of the city in reference to the same after ten days’ notice shall be fined, etc. ¡
• To make this provision of the ordinance effective as against complainant company they passed what has been denominated, this Ordinance No. 10, and made it applicable to the complain-: ■ ant company only, and insist by this subsequent ordinance that the channels of the ditches shall be confined withih certain definite limits, reducing the capacity of the ditches, to carry water, and provide that if such things are not done thpn, in conformity with the provisions of section 4, the person or corporation shall be daily prosecuted and fined for failure so to do.
If this does not .tend to impair vested rights and is pot calculated to inflict irreparable wrong without authority ip law, then we are unable to appreciate the full force and effect ■ of .the English language.
True it may be said with some force that the ordinance,■; imposed a penalty for failure to comply with its provisions, but such failure to so comply is not classified as a misdemeanor or a crime, but the penalty is imposed because the complainant company refused to surrender their acquired aild well recognized rights. It is the corporation that is affected' *196 and not the public. It is the corporation that is liable to have continually imposed upon them fines and to be continually harassed by legal proceedings.
We think that this is a case that peculiarly addresses itself to a court of equity, and that the court erred in sustaining the demurrer to the complaint.
The judgment must be reversed and the cause remanded.

Reversed.