HENRY M. THORNTON, APPELLANT, v. VERNON KINGREY ET AL., APPELLEES.

FILED DECEMBER 9, 1916.   No. 18914.

1. **Waters: MUNICIPAL CORPORATIONS: IRRIGATION LATERALS IN STREETS.** A village having for years maintained a lateral ditch for irrigation purposes through one of its streets, a landowner who had irrigated his land through this ditch for a long time and based the irrigation system of his land on the fact that the water was received from such lateral cannot be deprived of his right by the village in the regulation of its streets, unless it furnish him another lateral through which he may obtain water from the same source.

2. ———: ———: ———. A village may in the exercise of its police powers require one entitled to the use of water for irrigation purposes to take the same through another lateral if it provide a suitable connection-therewith without expense to the water user.

APPEAL from the district court for Scotts Bluff county: RALPH W. HOBART, JUDGE. *Judgment modified.*

*Wright & Mothersead,* for appellant.

*Morrow & Morrow, contra.*

HAMER, J.

Appeal from the judgment of the district court for Scotts Bluff county. There is not much, if any, dispute about the facts. The Gering irrigation district is the owner of a canal by means of which it supplies water to the lands within the said district. The canal which it owns runs west of the village of Gering. The plaintiff and appellant, Henry M. Thornton, owns a tract of land in the eastern part of the village of Gering, and his land is also embraced in the Gering irrigation district, of which it is a part. This land has for several years past been used solely for agricultural purposes. About ten years before the commencement of the action in this case the plaintiff and other landowners in the Gering irrigation district constructed an open ditch from the main canal of the irrigation district directly through O street to the tracts of land which were severally owned by them. The open ditch or lateral enters O street at its west end, and continues along said street to the eastern terminus thereof at a distance of about 16 feet from the curb line of the street. The ditch was constructed apparently without authority from the village, except as might be implied because no objection was made to the construction of the same. It might further be said that the village authorities undertook to supervise the distribution of water from this lateral, which was part of the distributing system of the Gering irrigation district. No one not an owner of land in the district had any right to use of the water conducted through said ditch, and no one had any right to the use of said ditch, except an owner of land in the said district. It is not claimed that the inhabitants of the village of Gering had any right to use said lateral except those entitled to water from the canal. It is claimed that the ditch was a private enterprise conducted only for the benefit of those entitled to water from the irrigation dis-

Thornton v. Kingrey.

trict, nor is it claimed that the lateral was in any manner connected with the municipal affairs of the village.

Before the commencement of this suit the village board caused the plaintiff to be notified that he must cease to draw water through said lateral for the irrigation of his land, but that he had permission to draw water through another lateral passing through a different street. Upon receiving this notice the plaintiff at once commenced this action to restrain the village board and its employees from preventing him from conducting water through said lateral in O street, alleging that it was the only lateral through which he could obtain water for the irrigation of his land. The court found that the land might be irrigated by means of another lateral, through which the plaintiff was to be permitted to conduct water upon constructing a small section thereof so as to connect said ditch with his land. There was a finding that the board of trustees of the village could not as a matter of law grant permission for the construction of said lateral, and the injunction prayed for was denied.

There is a contention by the appellees that the lateral in question did not become a part of the water-works of said village, and that the village was under no obligation to furnish water through said lateral to the plaintiff, or to permit the plaintiff to use it. Also that said lateral was constructed and maintained without any authority, and that it therefore constituted a nuisance which the village might abate at any time. Also that the power to abate said lateral carried with it the power to limit its use, and that the village board might, therefore, prevent the plaintiff, and as many others as they saw fit, from using said lateral. Also if said lateral was not a nuisance, and might be maintained as long as the village did not object, yet the power vested in the village board to regulate the use of the streets carried with it the power to require the removal of said lateral at any time, or to limit its use, as the board might deem advisable.

It is contended by appellant that the lateral was really a part of the water-works of the village; that said lateral is for the purpose of carrying water from the canal of the Gering irrigation district to the lands of the plaintiff and others. It is not admitted to be proved that said lateral was ever used for municipal purposes. It is claimed that its use was strictly limited to the carrying of water for those who were entitled to receive the same from the canal of the Gering irrigation district, and not for any other purpose. It is claimed that this was not a business which the municipality had any right or authority to conduct.

It is contended that under the provisions of section 5119, Rev. St. 1913, the village had authority to conduct water in open ditches for the use of the inhabitants. If that proposition should be conceded, the question is raised whether it would aid the appellant in this case. It is contended by the appellees that, if the village had authority to conduct water through open ditches to its inhabitants for irrigation or domestic purposes, it could hardly be contended that it had authority to distribute water for the irrigation district. It is contended that only a very small part of the inhabitants of the village were entitled to water from said irrigation district. It was therefore contended that the distribution of water to those who might be entitled to the same from said district was not an affair of the village of Gering, and could not be.

The land platted is known as "Thornton's first addition to the village of Gering." The rest of the land is farmed, and most of the platted portions are also farmed. The whole of this land is in the village of Gering and within the Gering irrigation district. These lands receive water from the main canal of the district. It is about 1½ miles west of the lands of the plaintiff. A part of the platted portion of the village of Gering lies between the plaintiff's land and the canal. It is claimed that this town lateral runs in an easterly direction from the main canal of the Gering irrigation district until it strikes the platted por-

tion of the village of Gering on the west. It is claimed that this lateral is the only ditch ever used for the irrigation of plaintiff's land; that it was built by the village and by different landowners, and that since it was built it has been maintained and operated by the village. It is said that a man or a boy, referred to in the evidence as "a water monkey," has been employed by the village to attend to the distribution of water from this lateral to the various tracts of land watered therefrom, including the lands of the plaintiff; that the plaintiff has been acquainted with these lands since long before they were irrigated, and since some time in 1902; that he was not, however, the owner of the lands until 1907, at which time the lands had been irrigated from this lateral for the period of five years; that the land continued to be irrigated from this lateral until 1913, when the village board ordered the "water monkey" to refuse to permit plaintiff to draw water therefrom, and directed him to take water from another lateral. Now, it seems to be agreed that this other lateral was not built to the lands of the plaintiff, and that to reach the lands of the plaintiff would require the plaintiff, to build some 700 feet of lateral down the streets and alleys of the village. The present action was commenced in September, 1913. All other landowners, except the plaintiff and the owners of lots in Thornton's first addition, were, and are, permitted to continue the use of the lateral as before.

The plaintiff's petition alleges the ownership of the land, and the manner in which it has been watered; that the defendants Kingrey, Southwell, Birchell, Rubottom and Hayes are the members of the village board of Gering, and that the defendant Barkdoll is employed by such board to superintend the distribution of water from the town lateral, and, acting under the instructions of the other defendants, who refused to permit the plaintiff to draw water therefrom, although the Gering irrigation district turned the water into the lateral for the irrigation of this land. The plaintiff also alleged that all the other landowners

were permitted to draw and use water from said lateral. The plaintiff prayed for an injunction to enjoin the defendants from interfering with the water turned into the lateral for the use of the plaintiff.

In the answer of the defendants it is admitted that the plaintiff owns the lands; that the lands will not grow crops without irrigation; that the lands are within the Gering irrigation district; that the defendants Kingrey, Southwell, Birchell, Rubottom and Hayes are the members of the village board, and that as such members they have assumed control over the said lateral so far as it is in the streets of the village of Gering; that the defendant Barkdoll is employed by the village board to look after the canal and to control the diversion of water therefrom to the several pieces of land situated in the village, and that the village board has instructed the said defendant Barkdoll not to permit plaintiff to receive water therefrom. And defendants further say that when water sufficient to irrigate the plaintiff's lands and the other lands in the village irrigated from said canal was carried through the lateral it flooded the streets of the village of Gering; that the defendants notified plaintiff that he must draw the water through certain other laterals constructed in the streets, and which are equally feasible; also that no permission was ever given the plaintiff to conduct water through the lateral, and that the village had no authority to give such permission.

The plaintiff in his reply alleged that the lateral was built with the knowledge and consent of the village, and since the building of the same it had been maintained by the village and taxes levied to maintain it, and that all of plaintiff's land is within such village, and that the taxes for the purpose of maintaining the lateral have been levied against said land and collected. It is further alleged that the lateral is of sufficient size to irrigate plaintiff's land and the lands of other persons who use the same. Affirmative defenses in the answer are denied.

In the bill of exceptions, there is a stipulation admitting the facts set forth in the statement made, and there is a plat showing the course of the lateral. It is further admitted that the village employed the defendant Barkdoll to take charge of the lateral and superintend the delivery of water, paying him for his services from the village treasury. Also it is stipulated that the plaintiff had demanded water from the Gering irrigation district for his lands, and that the village turned such water into the laterals in question. It is further stipulated that during the season of 1913 the plaintiff was not permitted to use water from the town lateral, and that, in order to use water from the lateral designated by the village board, it would be necessary for the plaintiff to construct the said 700 feet of lateral above mentioned, and which the village did not offer to build, but which they intended the plaintiff should build for himself.

The testimony of the witness Neeley shows that the lateral, if properly handled, has a sufficient carrying capacity to water the lands irrigated therefrom. The witness Gardner testified to a place in the lateral where its carrying capacity is limited, but that it will still carry enough to irrigate 420 acres of land. On cross-examination his evidence perhaps shows that there is sufficient capacity to supply water to everybody.

In its decree the court found the ownership of the land as alleged; the necessity or irrigation; the manner in which it had been irrigated before the time set forth in plaintiff's petition; that the village board had assumed to exercise control over the lateral, and had employed the defendant Barkdoll to divide the water among the various tracts of land. The court also found that the employment of Barkdoll was *ultra vires,* and that as a matter of law the board of trustees could not grant permission for the construction of a lateral in the streets; that prior to the commencement of this suit the plaintiff was notified that he must cease conducting water from the town lateral, and that he must draw water through another and different

lateral, and permission was given plaintiff to construct the unconstructed portion of said lateral to his land. The court also found that the village board wrongfully applied the funds of the village to the repair of said lateral; that said lateral was purely for private purposes for the irrigation of lots and lands lying within the corporate limits of the village; and that it was beyond the powers of the board to appropriate money for such purpose.

The court thereupon dismissed plaintiff's petition and found for the defendants. It is from this decree that the plaintiff appeals.

The plaintiff alleges the following errors of law: (1) The court erred in not holding that the village, by assuming control of the lateral in question, made it a part of its water-works; (2) the court erred in not holding that the plaintiff had acquired an easement by acquiescence to convey water through the lateral in question; (3) the court erred in holding that the village could discriminate against the plaintiff and refuse him the right to draw water through the lateral, and at the same time permit all others to use the lateral; (4) the court erred in refusing plaintiff the injunction as prayed and in dismissing plaintiff's action.

It is contended by the appellant: 1. That, the village having assumed control of the lateral in question, it thereby became a part of the water-works of the village. Rev. St. 1913, sec. 5119; 3 Kinney, Irrigation and Water Rights (2d. ed.) sec. 1448. The village having assumed control of the lateral it was its duty to furnish water to the plaintiff. 40 Cyc. 791.

2. The village, having acquiesced in the building of the lateral and affirmatively approved of the maintenance thereof, and having permitted plaintiff to acquire his land depending on this lateral for irrigation thereof, is estopped to deny his right to use it. *Omaha & C. B. Street R. Co. v. City of Omaha,* 90 Neb. 6; *Gregsten v. City of Chicago,* 145 Ill. 451, 36 Am. St. Rep. 496.

3. The village is not attempting to destroy the lateral, nor abate it as a nuisance, and it is not in fact a nuisance. *City of Denver v. Mullen,* 7 Colo. 345; *City of Fresno v. Fresno Canal & Irrigation Co.,* 98 Cal. 179.

4. The village could not wrongly discriminate, and permit all others to use the lateral, and refuse the plaintiff the same right. *Pickrell v. Carlisle,* 135 Ky. 126, 24 L. R. A. n. s. 193.

The evidence shows that after the lateral was constructed the village assumed control thereof, and employed a man to maintain the lateral and to supervise the distribution of the water therefrom. It is the contention of the appellant that this lateral was a part of the water-works of the village. Section 5119, Rev. St. 1913, empowers villages "to establish, alter and change the channel of water-courses, and to wall them and to cover them over; to establish, make and regulate wells, cisterns, windmills, aqueducts and reservoirs of water, and to provide for filling the same."

The lateral in question has been taken over by the village, which assumes the control and management thereof. While this may be new in Nebraska, in the western states, where irrigation is more universal, similar conditions have arisen, and the courts of those states have passed on such questions. The result of such consideration is, we think, fairly summarized by Mr. Kinney in 3 Irrigation and Water Rights (2d ed.) sec. 1448, as follows: "And it is further held that where ditches and canals run through a city and the water 'is used therefrom by the inhabitants for irrigation, although both the water rights and the ditches and canals may be owned by others, the municipality has the power to assume the control and management of the ditches and canals and the method of distribution of the water within the city limits. And having once acquired the right to control and to regulate the distribution of the waters, and such authority having been given to be exercised for the benefit of the people, this

duty becomes obligatory upon the municipality. And where a city with the consent of the original appropriators took control of such waters and distributed them to the inhabitants of the city, the right to exercise such control vested in the city, and it was therefore held that it was not only the right of the city, but also its duty, to employ such remedies as the law or rules of equity authorized to defend and maintain such right to control the use of such waters by the people." This would seem to give the city the right to control the property although it belongs to others. See *City of Springville v. Fullmer*, 7 Utah, 450.

"Where the water rights and the ditches and canals used in connection therewith and running within the limits of a municipality are owned by parties other than by the city or town itself, the question has often arisen as to the power of the municipality to pass ordinances regulating and controlling such rights and ditches and canals tending to restrict the original rights and privileges of the owners. A large, open irrigation canal running through the heart of a city may be dangerous at times to the life and property of the inhabitants. Oftentimes children, and sometimes older persons, fall in and are drowned. Their waters sometimes overflow or seep through their banks and the neighboring property is flooded and injured; or, again, the waters become stagnant with the accumulation of rubbish and breed disease. It is therefore necessary that there should be some control over such ditches and canals passing within the limits of municipalities so as to prevent, as far as possible, the interference with the rights and property of the municipality itself, and the danger to the lives, health, and property of its inhabitants. This regulation and control may come from two sources: First, direct statutory enactment under the police power of the state; and, second, by the way of municipal ordinances under the powers granted by the Constitution and statutes of the state. By direct statutory enactment

the legislature may require the owners of such ditches and canals operating within municipal limits to do certain things and perform certain duties for the protection of the public." 3 Kinney, Irrigation and Water Rights (2d ed.) sec. 1448. In the note to said section we find the following: "So, a statute which required the owners of such canals operating within the limits of municipal corporations to construct certain devices, such as lattice work and slats at the head of flumes to prevent persons and animals from being drawn through the flumes, was held to be valid as a proper exercise of the police power of the state; and, further, that the failure to perform such statutory duty specifically imposed was negligence *per se*, and, in the absence of contributory negligence, a recovery may be had for an injury thereby occasioned"— citing *Platte & Denver Canal & Milling Co. v. Dowell*, 17 Colo. 376.

In *Mugler v. Kansas*, 123 U. S. 623, 661, it is said: "The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

This doctrine, applicable to a legislative act, is by *Platte & Denver Canal & Milling Co. v. Lee*, 2 Colo. App. 184, held applicable to an ordinance seeking the punishment of those persons who had acquired certain rights touching the construction of ditches, and refused to be bound by an ordinance curtailing the enjoyment of the same.

An injunction will lie restraining a city from inter-fering with the use of ditch property which has not been lawfully ascertained and declared to be a nuisance. *City of Denver v. Mullen,* 7 Colo. 345.

The right of a municipality to the exclusive control and regulation of water within its limits, to which others have a paramount right and ownership, prior to the incorporation of the municipality, is based upon the acquiescence of such owners. *Fisher v. Bountiful City,* 21 Utah, 29.

In *Levy v. Salt Lake City,* 5 Utah, 302, the city did not build the ditch, which received water from a creek and carried it to several lot owners for purposes of irri-gation. The ditch was built by private landowners for their benefit, but it ran through block 59 of Salt Lake City. The city assumed control of this water, and turned it onto the premises of a lot owner to such an extent that it overflowed the land and ran into a cellar, where it injured personal property which was stored there. In an action by the owner of the property against the city it was held to be liable for the damages sustained, although the rights of the original builders of the ditch and users of the water were recognized and protected. The city was held liable for its mismanagement of its water system, of which the ditch was treated as a part. This is not unlike the instant case so far as the protection of the rights of the ditch builder is concerned. While the water comes from a private source and runs into a ditch constructed by private parties, it is yet subject to the control of the village, provided that the water users should not be deprived of the use of the water. The plaintiff is therefore entitled to a remedy which gives him the water which is turned out to him from the canal of the irrigation district.

In the brief of appellees we are cited to that part of section 5132, Rev. St. 1913, which reads: "To open, widen or otherwise improve or vacate any street, avenue, alley or lane within the limits of the city or village."

We are next cited to so much of section 5141, Rev. St. 1913, as provides that the "board of trustees shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city or village, and shall cause the same to be kept open and in repair, and free from nuisances."

To do what appellees suggest in their brief—fill up the ditch and remove the obstruction—would be an interference with the plaintiff's use of his property, the water that comes to him out of the canal of the irrigation district, and which he should be permitted to use, unless the destruction of its use becomes necessary in the interest of the public welfare. Besides, it does not appear that the village board of the village of Gering desires to destroy the ditch, or that there has been any attempt by the board to pass a resolution of that kind. There is only an attack on the plaintiff's use of the water. Water for irrigation is very much a necessity in the neighborhood of Gering and in many thousands of square miles all about Gering. The people there are used to ditches, and uncovered water running in them is so common that it does no violence to the feelings of any resident. An irrigated field with its very necessary ditch becomes a thing of beauty which delights the eye and cheers the spirit.

Where an irrigation and land company succeeded its predecessors in interest and acquired an easement and right of way for the construction of certain ditches to carry water for irrigation purposes, and the ditches were constructed and were used to carry the water according to the plan under which they were made, it was beyond the power of the city to destroy the property rights of the company, although it might destroy the ditches and compel the company to change the plan of its conduit from an open ditch to a pipe-line; but there could be no destruction of the easement or right of way acquired by the company. *City of Nampa v. Nampa & Meridian Irrigation District*, 19 Idaho, 779. In the syllabus in this case it is said: "A grant to a canal company of a

right of way or easement for its ditches in the streets
of a city is subject to the right of the city to thereafter
regulate the manner of the exercise of such easement,
or to change the grade of the streets in such a way as to
require a corresponding change in the conduit for the
delivery of water; and in exercising its right to grade
its streets, the city may, if it becomes necessary so to
do, remove such ditches and require the reconstruction
of the company's system by a pipe-line beneath the sur-
face." In the same case it is said, in substance, that
lot owners in a city who have become entitled to the use
of water from an irrigation system cannot be compelled
to pay for the company's system, nor can they be denied
water for the reason that its delivery has been made
more expensive.

The plaintiff in this case is entitled to the use of the
water which he gets from the canal because it is given
to him by the irrigation district. The lateral which
furnishes water to plaintiff runs through the main street
of Gering, and its grade is so steep that in times past the
water eroded the side of the ditch and made it ten feet
wide in places. To remedy this the town board put in
eight or nine drops from four to five feet high so as to
lessen the force of the water and prevent the cutting of
the banks. It was finally determined by the authorities
that if no more water than necessary to irrigate the
platted portion of the town site was carried through the
ditch the street could be preserved, but if it was at-
tempted to carry water enough to water the farm lands
below, in addition to the water for the inhabitants of the
village, the ditch would overflow, injuring the streets,
and would seep into the cellars and foundations of the
business buildings. For these reasons, the council passed
the ordinance complained of, providing that no water
for land should be carried through this lateral, but that
the same might be carried in a lateral near-by. The
village has the right to regulate the use of its streets.
It seems that the plaintiff, relying upon the fact that

the village had permitted him to obtain water from the main ditch by means of the lateral in question, expended money and labor upon his place in order to receive the water at the point where it was delivered to his land. The evidence shows that to take the water to his land from the other lateral will require the construction of about 700 feet of new lateral. It would be inequitable to permit the village to deprive the plaintiff of the use of the water from this lateral unless provision is made to supply the water to him by other means.

The judgment of the district court is modified so as to require the village, before ceasing to supply the plaintiff with water through the lateral in dispute, to take such steps as may be necessary so that plaintiff may be able to receive upon his land as much water through another lateral as he formerly obtained from the lateral in dispute, and without additional expense for construction of the same.

JUDGMENT MODIFIED.