HENRY M. THORNTON, APPELLANT, V. VERNON KINGREY ET AL., APPELLEES.

FILED OCTOBER 2, 1917.   No. 18914.

Rehearing of case reported in 100 Neb. 525. *Former judgment adhered to.*

SEDGWICK, J.

More than ten years before this action was begun, a lateral was constructed from the irrigation ditch of the Gering irrigation district, about 2½ miles to the village of Gering, and thence through the principal streets of the village.   A few years thereafter the plaintiff purchased a quarter section of land within the limits of the village.

When this lateral was constructed, the plaintiff's grantor, who was then the owner of this land, began irrigating the land from the lateral, and the plaintiff has continued so using the water until the village authorities undertook to prevent him from taking water from the lateral for that purpose. The plaintiff began this action in the district court for Scott's Bluff county to restrain the village authorities from interfering with his use of the water. No restraining order or alternative writ was granted, and upon the trial the court found the issues in favor of the defendants and dismissed the plaintiff's case. The plaintiff has appealed.

By our former decision (100 Neb. 525), the order of the district court was so changed "as to require the village, before ceasing to supply the plaintiff with water through the lateral in dispute, to take such steps as may be necessary so that the plaintiff may be able to receive upon his land as much water through another lateral as he formerly obtained from the lateral in dispute, and without additional expense for construction of the same." Upon the defendants' motion for rehearing, arguments were heard and the case was again submitted. Various questions are raised and discussed as to the jurisdiction and power of the village authorities in the premises. The statute provides that a village may enact ordinances, "to establish, alter and change the channel of watercourses, and to wall them and to cover them over; to establish, make and regulate wells, cisterns, windmills, aqueducts and reservoirs of water, and to provide for filling the same." Rev. St. 1913, sec. 5119. Furnishing water for the public purposes of the village and for the use of the inhabitants in arid and semi-arid districts is of so much importance that there can be no doubt of the authority of the village under this statute to provide and care for and control laterals for that purpose. It does not appear from the record what contracts, if any, the village authorities have with the irrigation district for the supply of the water, nor what formal proceedings, if any, were taken by

the village authorities in regard to the construction, management and control of the laterals in the village. The defendants have assumed control over the lateral, and are now exercising control of the same. They employed an agent, the defendant Barkdoll, to control the division of water therein to the different pieces of land under said lateral.

It was stipulated by the parties that the defendants employed the said Barkdoll to superintend the delivery of the water from the lateral, and paid him by warrant on the village treasurer. The evidence shows that the village owned a one-half interest in one of the laterals in the village by contract, and that the village constructed the lateral in question. There is no evidence of any ordinance of the village providing for supplying the inhabitants of the village with water in such manner, and there is no definite evidence as to when or in what manner the village undertook the construction or purchase or control of this plan or system for furnishing water. As the village has control and is managing it, we must assume that they have taken legal action and have protected the rights of the village and its inhabitants by suitable ordinances and contracts with the irrigation district. So that the question seems to be whether in the management of its system of water supply the village can be allowed under the law to discriminate in this manner between citizens. Before the commencement of this action an ordinance was adopted in which, after a preamble reciting some of the existing conditions, it was resolved: "That hereafter no water for the irrigation of farm lands shall be carried through any of the laterals in the village of Gering, except through said joint lateral owned by said Ray Carling and others and the village of Gering." The plaintiff alleged in his petition that the village was discriminating between him and the owners of other "farm lands" within the village, in that they allowed other lands to be irrigated from this lateral, but refused him the same privilege. The evidence will not justify the conclusion that

the village authorities were attempting such a discrimination, and this action must be regarded as an attempt to restrain the enforcement of the said ordinance.

It appears from the evidence that O street, through which this lateral runs from the point where it enters the village, descends rapidly at from 3 to 5 feet to the 100 feet, and that it has frequently happened that on account of this fall in the course of the lateral the water has escaped in large quantities and has overflowed parts of the village and has injured the foundations of some of the business buildings. An attempt has been made to remedy this by putting in what they call "drops" of 3 or 4 feet at various intervals, but these so far have not fully remedied the trouble. There is evidence, which does not seem to be contradicted, that a lateral 18 inches deep and 18 inches wide would carry the necessary volume of water without causing this overflow. There is no doubt that in the control and care of the streets the village authorities have a legal discretion to determine existing conditions, and the best method of serving all the interests of the public.

If the plan and system which has been adopted is found to be impracticable, the remedy must be with the village authorities. If it should be found necessary to transfer this lateral to another street of the village, no doubt it would be within the reasonable discretion of the authorities to do so. These lands which it is now attempted to deprive of water are within the village and have been improved and cultivated with reference to these water rights, which their owners have used for many years, and the evidence shows that to now deprive these parties of the use of this water would greatly damage them financially and probably in other ways. If the village continues to take this water supply from the irrigation district for the benefit of the inhabitants of the village, it must be for the benefit of all of the inhabitants alike and without discrimination.

We think, therefore, our former decision is right, and it is adhered to.

FORMER JUDGMENT ADHERED TO.